THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARNOLD WILSON, Defendant-Appellant.
First District (3rd Division)   No. 76-1498

Opinion filed September 13, 1978.—Rehearing denied January 3, 1979.

T. Lee Boyd, Jr. and Isaiah S. Gant, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a jury trial the defendant was found guilty of the murder

and armed robbery of Tennis Draper, aggravated battery and attempt (murder) of Samuel Pugh, Terry Howes and James Carrellas and attempt (armed robbery) of Samuel Pugh. He received a sentence of 30 to 60 years for murder and 6 to 18 years on each of all of the other offenses. The sentences are to run concurrently.

The defendant raises the following issues on appeal: (1) whether the trial court erred in denying his motion to suppress statements solely on the basis that the defendant denied having made any statement; (2) whether the trial court violated the defendant's fourteenth amendment right to due process and sixth amendment right to counsel when it denied his motion for a continuance, thereby denying the associate of the defendant's attorney of record time to prepare for trial and denying the defendant counsel of his choice; and (3) whether comments made by the prosecution during closing argument regarding the defendant's failure to present rebuttal testimony denied the defendant a fair trial.

The State presented testimony that on July 19, 1975, at approximately 7:30 p.m. the defendant, along with Reginald Smith and Robert Jones, entered a butcher shop located at 9401 South Ashland. Sam Pugh, Tennis Draper and Jimmy Carrellas, the three shop owners, as well as two employees, Margaret Bradford and Terry Howes, were present in the store at the time. The defendant and Jones produced weapons and the defendant said, "This is a hold-up." The defendant searched the store but was unable to find any cash. Draper and Pugh tried to talk the three men out of the robbery and offered to give them everything in the shop. At this point Draper offered to write out a check. Smith initially refused the check, saying "we want cash," but finally told him to make it out to him in the amount of $500.

After Smith took the check the three assailants conferred with each other. Jones then walked up to Draper and shot him in the face. Jones then shot Pugh in the face. Pugh fell to the floor and was shot two more times. Terry Howes was shot in the neck and was permanently paralyzed from the neck down. Jimmy Carrellas was shot twice in the forearm and once in the chest.

Pugh testified that four or five days later in the hospital he was shown photographs from which he identified the defendant. He further testified that when the defendant was in the store on the day of the shooting, he was wearing a cap with a big top on it. He had never seen the defendant before that day. Margaret Bradford identified the defendant in court as one of the three men who had been in the store that night. She further testified that on July 20, the day after the incident, she viewed a lineup at which she identified the defendant.

Over the defendant's objection Officer Dennis McGuire testified that in the county jail the defendant told him that he did not shoot anyone. The

defendant said he had gone to the scene with Jones and the co-defendant Smith because Draper owed Smith $500. The defendant said that Jones went crazy and shot Draper. At that time, the defendant and Smith started to leave the store.

The defendant did not testify nor did he present any alibi witnesses. In his opening statement T. Lee Boyd, counsel for the defendant, stated to the jury that he did not know what the evidence was going to show "because Mr. Arnold Wilson was not there. I'm saying to you that Mr. Arnold Wilson did not commit these crimes. I'm saying to you that Mr. Arnold Wilson is not involved in this incident."

On September 17, 1975, the defendant filed a motion for a severance on the ground that his co-defendant, Reginald Smith, had given a statement to police officers which inculpated the defendant. The motion was filed by T. Lee Boyd, Jr., who had appeared on behalf of the defendant on that date and who had appeared for the defendant at the arraignment. Boyd was an associate of R. Eugene Pincham, who was the defendant's attorney of record. On October 3, 1975, Boyd again appeared on the defendant's behalf, and again on October 15, 1975, December 3, 1975, and March 2, 1976. Two other associates of Pincham's also appeared for the defendant on November 5, 1975, February 24, 1976, and February 25, 1976. Pincham himself appeared on the defendant's behalf only twice.

The trial court denied the defendant's motion for a severance on the ground that the defendant was being tried by a jury whereas Smith had requested a bench trial. Since the jury in the defendant's case would be removed when the statement concerning the defendant was used during Smith's trial, the judge ruled that there was no need to grant a severance.

On March 2, 1976, Boyd appeared for the defendant and requested a continuance because Pincham was on trial. The trial judge initially denied the motion because the co-defendants Smith and Wilson were being tried jointly and Smith's term ran on March 5. Boyd objected but agreed to act as the defendant's attorney at trial. He requested a continuance in order to prepare for trial. The judge continued the case until March 4, 1976. On that day, Boyd again argued for a severance because of antagonistic defenses. He stated that it was the defendant's position that he was not present at the time of the incident. It had come to his attention that Smith, the co-defendant, intended to use the defense of compulsion and show that it was the defendant Wilson who coerced Smith into the commission of the offenses.

On March 8, 1976, a hearing was had on the defendant's motion to suppress the statement he had allegedly made to the police. The defendant testified that he was arrested at home on July 20, 1975. He stated he was interrogated by police officers while he was in the county jail and at no time was he given his constitutional rights. He testified that

he was put in a lineup with five other persons and was viewed by somebody. He refused to say anything to the police officers without the advice of counsel. He testified he knew he had a right to a lawyer and was aware of his constitutional rights. He stated that he "used the fifth amendment when I talked to the police. The police were questioning me and I was refusing to discuss the incident with them." The defendant testified that he had never made an oral statement of any kind to a Chicago police officer regarding the incident which took place on July 19, 1975.

Chicago Police Officer Dennis McGuire testified that he arrested the defendant at his home on July 20, 1975. He advised the defendant of his *Miranda* rights after his arrest and that the defendant refused to make a statement at that time. However, on July 23, 1975, McGuire received a message from a Captain Harris at county jail that the defendant wanted to talk with a homicide investigator. McGuire went to county jail and spoke with Director Winston Moore before speaking with the defendant. McGuire told the defendant that he had the same rights as before. The defendant replied that he knew those rights, that he had talked to his attorney and "now he wanted to talk to us." McGuire stated on cross-examination that he did not advise the defendant of his rights at any time on July 23, 1975. He also stated that he did tell him he had the right to see an attorney, although that fact was not reflected in the police report. McGuire testified that the defendant gave him "the whole story" regarding the incident of July 19, 1975, in the form of a statement, as opposed to responding to any questioning. McGuire never asked the defendant to give him a written statement.

The trial court denied the defendant's motion because the defendant stated that he made no statements. The trial court believed that this was a fact question for the jury and that there was nothing for the court to determine under *Miranda.*

The defendant first argues that the denial of his motion to suppress this statement solely because he testified that he never made such a statement constituted a denial of due process of law as guaranteed by the fourteenth amendment. (U.S. Const., amend. XIV.) The defendant relies on *Lee v. Mississippi* (1948), 332 U.S. 742, 92 L. Ed. 330, 68 S. Ct. 300, and *People v. Norfleet* (1963), 29 Ill. 2d 287, 194 N.E.2d 220. In *Lee* the trial court denied a motion to suppress on the ground that the defendant had denied making any confession. The United States Supreme Court reversed and stated, "The due process clause of the Fourteenth Amendment invalidates a state court conviction grounded in whole or in part upon a confession which is the product of other than reasoned and voluntary choice." (*Lee v. Mississippi* (1948), 332 U.S. 742, 745, 92 L. Ed. 330, 332, 68 S. Ct. 300.) The Illinois Supreme Court in *Norfleet* relied on

*Lee,* citing the quoted section and found that the trial court erred in denying the defendant a hearing. *People v. Norfleet* (1963), 29 Ill. 2d 287, 290-91.

The State seeks to distinguish *Lee* because a coerced confession was involved while the instant case involves a violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. No authority is cited for that proposition nor is a reason given why this should distinguish the case. We see no distinction. A reasoned and voluntary choice is not present unless a defendant is aware of his rights against self-incrimination under the fifth amendment of the constitution as guaranteed by *Miranda.*

■■ ■ The State argues in the alternative that any error was harmless because of the overwhelming evidence of guilt. At a pretrial hearing on March 2, 1976, and again in the opening statement counsel for the defendant stated that their defense was that the defendant was not present at the scene. The statement of the defendant in question here places him at the scene. In the context of this case that evidence is very significant and we are unable to say that beyond a reasonable doubt this error is harmless. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) Because the court did not determine the question of alleged *Miranda* violations raised in the defendant's motion to suppress and this was not harmless error the defendant is entitled to a rehearing on that motion. However, because upon rehearing that motion to suppress may again be denied and therefore there would be no need for a retrial, we will now consider the defendant's other issues raised on appeal.

The defendant argues the trial court violated the fourteenth amendment right to due process and the sixth amendment right to counsel when it denied his motion for a continuance. He contends that the court thereby denied Boyd, an associate of the defendant's attorney of record sufficient time to prepare for trial and also denied the defendant counsel of his choice. However, the record indicates that Boyd appeared on the defendant's behalf five times before trial while Pincham had appeared only twice. Two other attorneys who were also associates of Pincham also appeared on the defendant's behalf prior to trial. It is apparent that the defendant was being represented not only by Pincham himself, but by his associates as well. There was no objection at any time prior to trial to the absence of Pincham or the substitution by his associates.

■■ Whether or not a continuance will be granted is a matter of discretion for the trial court, and that decision will not be overturned unless an abuse of discretion can be shown. (*People v. Hayes* (1972), 52 Ill. 2d 170, 175, 287 N.E.2d 465; *People v. Hobbs* (1975), 35 Ill. App. 3d 29, 31, 340 N.E.2d 601.) The defendant's case was originally set for trial on March 2, 1976. The judge continued the case until March 4, which was as long as the case could be continued in view of the fact that a co-defendant's term ran on

Friday, March 5, 1976. However, the defendant's trial did not actually begin until Tuesday, March 9, 1976. The record indicates that defense counsel competently represented the defendant, offering an opening statement and a closing argument, conducting rigorous cross-examination and presenting witnesses on the defendant's behalf. In light of the fact that the co-defendant's term would run on March 5, 1976, the time between the denial of the continuance and the actual beginning of the trial itself, defense counsel's familiarity with the case through his five previous appearances, and his competent representation of the defendant at trial we find that the denial of the continuance was not an abuse of discretion. *Hayes,* at 175; *Hobbs,* at 31; *People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356.

■■ The defendant relies on *People v. Green* (1969), 42 Ill. 2d 555, 248 N.E.2d 116, in support of his argument that he was denied his right to counsel because of the trial court's refusal to sustain his motion for a continuance so that counsel of his choice might be present. In *Green,* the defendant made clear his desire to be defended by privately retained counsel, who was out of town on the date his case was called to trial for the second time. The defendant explained that although he was unable to remember the attorney's name, the First Presbyterian Church had arranged to provide an attorney for him and that attorney was in Washington on another case. The court noted that it would have been a simple matter to verify the defendant's statement, and that the defendant's constitutional right was violated when the court summarily denied the defendant's request for a continuance and insisted that he go to trial that day, represented by an assistant public defender who had no opportunity to investigate the case. The court observed, however, "that the right of an accused to be represented by counsel of his choice cannot be permitted to bring about an 'indefinite thwarting of the administration of justice.' " (*Green,* at 557.) In the case at bar, the court appointed an associate of the attorney of record who was already familiar with the case and had in fact appeared on the defendant's behalf five times prior to the appearance on the motion for a continuance. Also, the trial did not begin until six days after the continuance was denied whereas in *Green,* the defendant was forced to go to trial that same day. Accordingly, we do not find that the denial of the defendant's motion for a continuance on the grounds that it denied him counsel of his choice constituted an abuse of discretion.

■■ ■ Finally, the defendant argues that comments made by the prosecution during closing argument regarding the defendant's failure to present rebuttal testimony denied the defendant a fair trial. The Assistant State's Attorney, referring to the alleged oral statement made by the defendant at Cook County jail on July 23, 1975, noted that Investigator

McGuire, who had testified regarding the statement, "told you he received a message from Captain Morris, Arnold Wilson wants to talk to you. He said when he went over to the jail he spoke with Superintendent-Warden Winston Moore. Do you think if that weren't true Mr. Boyd wouldn't have called Captain Morris and Warden Winston Moore?" The defendant's objection to this statement was overruled. The defendant argues that it was improper for the prosecution to comment on the defendant's failure to present witnesses when such witnesses were equally accessible to both parties. The defendant contends that this was an attempt by the prosecution to shift the burden of proof to the defendant and was also an improper comment on facts not in evidence. However, in *People v. Peter* (1973), 55 Ill. 2d 443, 460-61, 303 N.E.2d 398, the court held that a prosecutor's comments during closing argument concerning the lack of evidence contradicting evidence which the State had presented did not shift the burden of proof to the defendant and was a proper area for comment. If other evidence tends to prove the defendant's guilt and he fails to bring in evidence within his control of an explanation or refutation, this omission is a circumstance entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the State's Attorney. (*People v. Blakes* (1976), 63 Ill. 2d 354, 359-60, 348 N.E.2d 170; *People v. Williams* (1968), 40 Ill. 2d 522, 529, 240 N.E.2d 645; *People v. Lion* (1957), 10 Ill. 2d 208, 139 N.E.2d 757.) While failure to call a witness may not be relied upon as substantial proof of a criminal charge, the permissibility of comment on such failure is not limited to situations where the potential witnesses are unavailable to the prosecution. (*People v. Parker* (1976), 40 Ill. App. 3d 597, 604-05, 352 N.E.2d 394.) We do not believe that the trial court committed prejudicial error in overruling the objection to the prosecutor's remark.

For the foregoing reasons the cause is remanded for a hearing on the defendant's motion to suppress. If the motion to suppress is denied the trial court shall enter a new final judgment of conviction. If the motion is allowed the cause shall be retried.

Cause remanded with directions.

SIMON and McGILLICUDDY, JJ., concur.