THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THOMAS LA FIURA, Defendant-Appellant.
Second District    No. 79-529

Opinion filed January 21, 1981.—Rehearing denied February 17, 1981.

---

Michael Buckley Bolan, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, and Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Thomas La Fiura, pursuant to indictment, was found guilty by a Du Page County jury of armed violence and aggravated assault in connection with the shooting of two Addison policemen. The trial court vacated the conviction of aggravated assault but sentenced defendant to 10 years' imprisonment for armed violence. (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2.) From this sentence defendant appeals.

At about noon on October 1, 1978, defendant telephoned the Addison Police Department to complain about a man with a gun in his house. Upon further inquiry by the police dispatcher, defendant said that he himself had the gun and would shoot the first policeman to arrive at the premises.

La Fiura had been severely depressed. His wife, with whom he had bitterly quarreled three nights before, had not returned home and could not be found. To console himself, La Fiura had consumed a large quantity of whiskey from Thursday evening until the early morning hours of Sunday, October 1. Later that morning at his parents' home he resolved to commit suicide. Defendant testified that he loaded a shotgun and placed it against his head but could not bring himself to pull the trigger. It was then that he called the Addison Police Department.

When the first police car arrived at the house, defendant opened the front door and fired the shotgun in the direction of the car, wounding the two officers. At trial, defendant claimed that this was done to provoke the police into shooting him since he was unable to shoot himself. Shortly thereafter, a second squad car arrived. La Fiura came out of the house and, still holding the shotgun, began walking toward one of the officers. After ignoring repeated demands that he halt and drop the shotgun, two policemen fired upon defendant striking him in the upper thorax and leg.

On June 15, 1979, more than eight months after the shooting, defendant was brought to trial where he presented evidence in support of his defense of insanity. Special verdict forms of not guilty by reason of insanity were submitted to the jury together with the general verdict forms of guilty and not guilty.

I.

Defendant first assigns as error the trial court's omission of certain jury instructions with regard to the special verdict of not guilty by reason of insanity. By supplemental record to this court the parties have stipulated that prior to the conference on instructions reported of record, an off-the-record conference was held. Defense counsel requested the court to instruct the jury as set forth in section 115—4(j) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 115—4(j)). This statute provides in part:

"(j) * * * When the affirmative defense of insanity has been presented during the trial, the court shall provide the jury not only with general verdict forms but also with a special verdict form of not guilty by reason of insanity, as to each offense charged, and in such event *the court shall separately instruct the jury* that such a special verdict of not guilty by reason of insanity may be returned instead of a general verdict but such special verdict requires a *finding by the jury that the defendant committed the acts charged* but at the time of the commission of those acts the defendant was insane. In the event of a verdict of not guilty by reason of insanity, a hearing shall be held pursuant to the Mental Health Code of 1967 to determine whether the defendant is in need of mental treatment." (Emphasis added.)

The supplemental record further discloses that the trial court refused to issue written instructions incorporating the text of this paragraph but agreed to explain to the jury in its own words what the paragraph required. Additionally, the court stated that it would issue written instructions pertaining to the issue of insanity but only as provided in the Illinois Pattern Jury Instructions, Criminal (1968) (hereinafter cited as IPI Criminal).

Despite its promise to orally instruct the jury on the substance of section 115—4(j), only the IPI written forms were used. No other comments were made by the court to the jury concerning the special insanity verdict or, specifically, the substance of section 115—4(j).

The pertinent written instructions submitted to the jury included People's Instruction No. 25 (patterned after IPI Criminal No. 24.01), which sets forth the statutory definition of insanity, and People's Instruction No. 13A (IPI Criminal No. 25.01), which purports to instruct on the issues involved in the insanity defense in relation to the elements of the underlying crime and the burden of proof. These instructions are reproduced below as they appear in the record.

"People's Instruction No. 25.

The following instruction was given by the Court with no objection:

A person is insane and not criminally responsible for his conduct if at the time of the conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law."

"People's Instruction No. 13A.

The following instruction was given by the Court with no objection:

To sustain the charge of armed violence, the State must prove the following propositions:

First: That the defendant was armed with a dangerous weapon; and

Second: That while so armed he (a) attempted to murder [policeman] David J. Wall; or (b) committed an aggravated battery upon David J. Wall; or (c) committed an aggravated battery upon [policeman] Donald Sommers; or (d) committed criminal damage to property in excess of $150; and

Third: That the defendant was then sane.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

■■ ■ Supreme Court Rule 451(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 451(a)) requires that IPI instructions be used when available, unless the court determines that they do not accurately state the law. (*People v. Dordies* (1978), 60 Ill. App. 3d 621, 626, 377 N.E.2d 245, 250.) Defendant

cannot complain, therefore, if the IPI instructions that were issued correctly state the principles of law applicable to the case, or if his refused instructions only duplicate others that were given. *People v. Stringer* (1972), 52 Ill. 2d 564, 569-70, 289 N.E.2d 631, 634; *People v. Hughes* (1977), 46 Ill. App. 3d 490, 500, 360 N.E.2d 1363, 1369.

Defendant contends that the jury was not properly instructed with regard to the special verdict of not guilty by reason of insanity absent instructions in the language of section 115—4(j). He insists that the statutory requirement therein, *viz.*, that the court shall *separately* instruct the jury concerning the significance of the special verdict, is not satisfactorily implemented by the provisions of IPI Criminal Nos. 24.01 and 25.01. The requirement of a separate insanity verdict instruction is underlined, he continues, by the fact that the legislature provided for a special verdict in the case of insanity alone, and for no other affirmative defense. In all other cases only general verdicts are mandated.

We find that the instructions submitted in this case adequately instructed the jury as to the general verdicts of guilty and not guilty. People's Instruction No. 13A (IPI Criminal No. 25.01) informed the jury that if it found affirmatively on all the elements of proof therein it should return a guilty verdict, but if any proposition had not been proved beyond a reasonable doubt it should bring back a verdict of not guilty. However, there is nothing in this or any other applicable IPI instruction which explains the significance of the special verdict of not guilty by reason of insanity. Thus, because one of the elements that the State must prove is the sanity of the defendant, the jury could, consistent with the tendered instructions, have returned a general verdict of not guilty if it found that the defendant was insane even though all other elements of the crime were proved beyond a reasonable doubt.

The reason for a special verdict of insanity as distinct from a general verdict would seem apparent from the last sentence of section 115—4(j). Whereas a general not guilty verdict wholly acquits the defendant, a special verdict of not guilty by reason of insanity subjects the defendant to a post-trial hearing to determine whether the defendant is in need of mental treatment. The statute therefore requires that the trial court separately instruct the jury that it may return a verdict of not guilty by reason of insanity but, in so doing, must find that the defendant committed the acts charged but was insane at the time. Such an instruction is intended to inform the jury that if sanity is the sole element that the State has failed to prove then the special verdict should be returned, thus advising the court to order a hearing under the Mental Health Code of 1967 (now the Mental Health and Developmental Disabilities Code).

The omission of this instruction in the present case, however, was

harmless error. Had the legislature required that the jury be instructed as to the consequences of returning a verdict of not guilty by reason of insanity, *i.e.*, were they to be told that the defendant would not necessarily go free but would be subject to a commitment hearing, then a court's refusal to so instruct the jury might well prejudice a defendant who would be denied the possible benefit of the jury's consideration of this contingency. However, we find no such requirement in section 115—4(j). *People v. Meeker* (1980), 86 Ill. App. 3d 162, 407 N.E.2d 1058.

As we have said, the plain language of this statute requires only that the court instruct the jury first, that they may return a special verdict, and second, that such a verdict requires a finding that the defendant committed the acts charged but at the time was insane. That is all. Whereas formerly the statute provided further that the jury decide whether the defendant had recovered from his condition of insanity, the 1977 amendments to the law removed this determination from the province of the jury. (*People v. Martinez* (1980), 86 Ill. App. 3d 486, 408 N.E.2d 358.) In its present form, the law requires that once a special verdict is rendered, the defendant is bound over for a commitment hearing *by operation of law*.

Since there is thus no requirement that the court instruct as to the consequences of a special verdict, we can see no other reason why the failure of the trial court in the case before us to provide an instruction explaining the verdict of not guilty by reason of insanity can be said to have prejudiced the defendant. People's Instructions Nos. 13A and 25, together with the verdict forms, adequately informed the jury of the elements of the crime of armed violence (including sanity), the defense of insanity and the burden of proof applicable to this case.

## II.

Defendant's second assignment of error is that the court abused its discretion in denying defendant's motion for a continuance ten days before trial. In support of this motion it was argued that defense counsel was unable to effectively prepare for trial because of the physical incapacity of the defendant.

The gunshot wounds which defendant sustained to his leg and upper thorax in the course of the shoot-out with the police required hospitalization and repeated surgery. Defendant testified that a sympathectomy (removal of the sympathetic nerves) was performed on his left side where he had been wounded in the chest. In addition, despite surgery which repaired the use of his leg, osteomyelitis had developed in the bone. As a result, defendant was prescribed antibiotic and pain-killing drugs from the time of the incident through the course of the trial. Oral medication

taken by defendant during this time included Tylenol-4, Dalmane and Talwin. (No competent evidence appeared in the record which characterized these drugs as narcotic or nonnarcotic.)

Further, on May 31, 1979, less than three weeks before trial, defendant suffered an unrelated injury to his elbow requiring surgery and hospitalization until June 5. Three days later his attorney filed the motion for continuance here at issue.

The trial court was not unaware of defendant's condition, nor had it been unsympathetic to defendant's earlier requests for continuances. Arraignment was twice postponed on motion of defense counsel due to defendant's hospitalization. The initial period for discovery was extended. The date for trial setting was twice continued on motion of defendant. And on February 10, 1979, again on defendant's motion, the final status date was continued a full four months to June 15 and the case set for jury trial on June 18.

Section 114—4(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—4(b)) enumerates the appropriate grounds for a continuance in criminal proceedings. Section 114—4(b)(4) provides that a continuance is proper where the defendant cannot stand trial because of physical or mental incompetency. Subsection (i) permits the court to hold a hearing for the purpose of determining if defendant is physically able to appear in court or assist in his defense. The hearing may be held upon motion of counsel or upon the court's own motion. Subsection (e) states that all motions for continuance are addressed to the discretion of the trial court and are to be considered in light of the movant's diligence.

Our courts have consistently held that the granting of a continuance to permit further preparation for a case is a matter resting within the sound discretion of the trial court, whose decision will not be disturbed on review unless it is clearly shown that such discretion has been abused. (*People v. Clark* (1956), 9 Ill. 2d 46, 49, 137 N.E.2d 54, 55, *cert. denied* (1957), 352 U.S. 1002, 1 L. Ed. 2d 546, 77 S. Ct. 559; *People v. Burnett* (1979), 73 Ill. App. 3d 750, 753, 392 N.E.2d 235, 237.) Before we can say that the motion was improperly denied it must appear that the court's refusal in some manner embarrassed the accused in his defense and thereby prejudiced his rights. (*People v. Coleman* (1970), 45 Ill. 2d 466, 469, 259 N.E.2d 269, 271.) Where, however, the record shows that at trial the movant's attorney appeared thoroughly prepared and conducted his representation with diligence and skill the courts have been reluctant to find such prejudice. *People v. Canaday* (1971), 49 Ill. 2d 416, 427, 275 N.E.2d 356, 363; *People v. Wilson* (1978), 66 Ill. App. 3d 330, 336, 384 N.E.2d 14, 18.

In the case at bar, defendant failed to show with any particularity

how a continuance would have aided him in the preparation of his defense. He did not claim that any evidence or witnesses would otherwise have been made available to him; indeed, more than eight months elapsed between the shooting and the trial during which time defendant prepared his case. Rather, the sole claim is that defendant was unresponsive when he took the stand to testify in his own behalf. As counsel admits, however, the alleged inability of defendant to communicate on the stand was due to events which occurred after the trial began, the evidence of which was not before the court at the time the pretrial motion was heard.

On the eve of testifying, defendant went to a hospital where he received injections of Talwin, Phenergram and Demoral because the oral medication was then insufficient to suppress the pain. Defense counsel did not learn of this until after the trial, allegedly because defendant believed it hopeless to ask the court for a continuance which had earlier been denied. Both defendant and his attorney testified at a post-trial hearing that defendant's ability to communicate with counsel at trial was thereby impaired.

For purposes of the pretrial motion for continuance, the exercise of the court's discretion must be viewed in light of the evidence before the court at the time the motion was made and not as it might appear in retrospect on the basis of subsequent events. (*People v. Arndt* (1972), 50 Ill. 2d 390, 393, 280 N.E.2d 230, 232; *People v. Poland* (1961), 22 Ill. 2d 175, 178, 174 N.E.2d 804, 805.) Had the court known that defendant would require medication during the course of the trial in addition to that which he was taking at the time of the hearing, its decision to deny the motion may well have been different. That, however, was not the case. Defense counsel neither made such representations to the court nor did he request that a fitness hearing be held prior to trial as was his right. Ill. Rev. Stat. 1979, ch. 38, pars. 114—4(i), 1005—2—1(c).

■■ Accordingly, in the absence of specific evidence demonstrating prejudice, it cannot be said that the trial court abused its discretion in denying defendant's motion.

### III.

It remains to be decided whether in light of his drugged condition at trial, defendant should have been granted a new trial.

It is an established rule of constitutional law that the conviction of a person who is unfit to stand trial violates due process of law. (*Pate v. Robinson* (1966), 383 U.S. 375, 378, 15 L. Ed. 2d 815, 818, 86 S. Ct. 836, 838; *People v. Murphy* (1978), 72 Ill. 2d 421, 430, 381 N.E.2d 677, 682.) Ordinarily, when a *bona fide* doubt as to a defendant's fitness is raised the court should order a hearing to determine that question before proceeding. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—1(b), (c).) For reasons

previously discussed, such a *bona fide* doubt was neither raised nor apparent to the court prior to or during the trial.

The Unified Code of Corrections sets forth two criteria in the determination of a defendant's fitness to stand trial: the ability to understand the nature and purpose of the proceedings against him and the ability to assist in his defense. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—1(a).) Only the second criteria is here at issue.

The purpose served by the requirement that a defendant be able to assist in his own defense is illustrated by *People v. Thomas* (1969), 43 Ill. 2d 328, 253 N.E.2d 431. There, defendant, insisting that God was his attorney, refused to communicate with the public defender appointed to represent him. The court observed:

> "The consequence of a lack of co-operation * * * is to deny counsel access to defendant's knowledge of the factual basis of the charges against him, or to information that might refute those charges. * * * To require counsel to attempt a defense without the defendant's co-operation thus imposes a substantial burden. Such a requirement should be imposed only when the defendant's unresponsiveness is not the result of a lack of mental capacity." 43 Ill. 2d 328, 332, 253 N.E.2d 431, 433.

Similarly, in *People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239, defendant had refused to speak with court appointed counsel until four days before trial. Explaining the requirement that defendant be able to assist in his defense, the court stated that "he should be capable of co-operating with his counsel to the end that any available defenses may be interposed." 11 Ill. 2d 360, 369, 143 N.E.2d 239, 245.

Turning to the present case, defense counsel testified in the post-trial hearing that defendant seemed "out of control" on the day he testified and that counsel was "shocked" by defendant's conduct. The State, on the other hand, characterized defendant's responses as "articulate" and argued that he appeared to understand those matters on which he was questioned. After carefully reading the entire record of this trial, we must agree with the State.

■■ The fact that defendant was taking medication does not in itself render him unfit to stand trial. (*People v. Jackson* (1978), 57 Ill. App. 3d 809, 813, 373 N.E.2d 583, 586; *People v. Dalfonso* (1974), 24 Ill. App. 3d 748, 750, 321 N.E.2d 379, 381.) Although defendant did seem to ramble at certain points, his testimony overall was coherent and consistent with his defense. Counsel did not allege that defendant failed to cooperate in the preparation of his defense during the eight months preceding trial, or that counsel did not have access to defendant's knowledge of information that might refute the charges against him. It is evident from the record that defendant's case was in all respects competently prepared and presented.

Furthermore, defendant has failed to show how he would otherwise have testified had he not been under the influence of the additional medication.

We therefore conclude that defendant ably assisted in his own defense and was fit to stand trial.

The judgment of the Circuit Court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.