THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LAURA WILLS, Defendant-Appellant.

Second District   No. 2—86—0106

Opinion filed December 31, 1986.—Rehearing denied February 2, 1987.

G. Joseph Weller and Robert C. Cooper, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Kenneth R. Boyle, William L. Browers, and David A. Bernhard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Laura Wills, appeals from her conviction of forgery (Ill. Rev. Stat. 1985, ch. 38, par. 17—3) after a jury trial, contending that she was denied a fair trial because the prosecutor stated in closing argument that defendant's testimony was uncorroborated by certain witnesses who did not testify.

Defendant was charged by information filed September 6, 1985, with forgery in that she with intent to defraud knowingly delivered a check which was issued to "Leavy Napoleon" to Nena Elliott, knowing such check to be forged to appear as if it were endorsed by the payee. Among the names listed in the State's response to defendant's motion for pretrial discovery as names of the persons the State intended to call as witnesses was the name and address of Denise Coleman. Defendant stated in her answer to the State's motion for pretrial discovery that she might call each person named by the State in its answer to discovery as well as Lydell Hopson.

Prior to trial on November 12, 1985, the assistant State's Attorney stated that he had not been able to find Denise Coleman and therefore did not intend for her to be a witness. Defense counsel stated that he could not find Denise Coleman either.

Nena Elliott, a cashier at the First Federal Savings & Loan Association in Rockford, testified that defendant presented a check to her on February 1, 1985, which had been endorsed by Leavy Napoleon. She told defendant that she would have to have Leavy endorse the check to defendant. Defendant then left the bank with the check and returned in about three minutes with an endorsement of the check to defendant. She had earlier testified, at the September 6, 1985, preliminary hearing, that about five minutes had elapsed. On both occasions, defendant came into the bank with the same woman. She cashed the check for defendant after the check was endorsed to her and the supervisor approved. The cash was not deposited in defendant's account. She helped a customer after defendant left the first time, but

she does not know how many customers she assisted.

Napoleon Leavy testified that the check cashed by defendant was his retirement fund check and that he never received it, endorsed it, or gave anyone permission to endorse it. He is known by the name "Bo" to defendant. Defense counsel asked him who Denise Coleman was, and he responded that she was one of his brothers' former girl friends. He lived in apartment eight at 328 West State; Coleman lived in apartment one. His mailbox lock was missing. He asked Coleman to watch his mail while he stayed with his blind mother at a different address.

Defendant testified that on January 1, 1985, she received a telephone call from her friend Cynthia Davis. Davis told defendant that Denise Coleman needed to cash a check for Coleman's sick grandfather because they did not have a bank account. Defendant had met Coleman, whom she had characterized as an acquaintance, a month earlier. Defendant told her that she did not want to cash the check because she did not think the check was legitimate and suggested that she ask another person. Coleman and Davis called back a few hours later; Coleman explained she needed to pay some bills and that she had identification to prove it was her grandfather's check. Defendant was told that the grandfather could not cash the check because he was sick.

Defendant told them she would pick Coleman and Davis up, which she did. At the bank, Coleman gave her the check which was endorsed to Leavy Napoleon. The teller told defendant and Coleman that the check had to be endorsed to defendant by Napoleon Leavy in order for defendant to be able to cash it. Coleman said that she would have her grandfather sign the check to her and she walked out of the bank. Defendant took her "back down by Osco and I parked and she went in the house—well, she ran across the street and pulled open a door and, I guess, she went upstairs and when she came out she had the check endorsed in my name." Defendant did not know which building Coleman went into and did not see whether Coleman used a key. It took seven or eight minutes to return to the bank. They returned to the bank with Davis, defendant's boyfriend, and defendant's child. Defendant cashed the check and gave the money to Coleman; Coleman gave her $3 for gas. Defendant did not know that Bo was Napoleon. Defendant denied having the intent to defraud. Defendant also testified that she had pleaded guilty to stealing a carton of cigarettes in July 1985.

The State's closing argument commented on the failure of defendant to call certain witnesses. The assistant State's Attorney stated

that "[t]he defendant's version of what happened in this case is totally uncorroborated. Denise Coleman, who supposedly told her all of these things about the check, did not testify." Defendant's objection to this comment was overruled. In chambers, defendant argued that the State could not comment on the failure of the defense to call a particular witness. The court stated that defendant had introduced the names of Coleman, Davis, and Lydell Hopson into evidence and the State could comment on the fact that the defendant's story was uncorroborated. The closing argument of the State was resumed with the statement that "[a]s I was saying before the defendant's story in this case is uncorroborated not by Denise Coleman, by her good friend Cynthia Davis nor by her boyfriend, Lydell."

The jury found defendant guilty. Defendant moved for a new trial, relying in part on the comments on the failure of the three witnesses to testify. The motion was denied, and defendant was sentenced to probation for 2½ years and 6 months' incarceration in the Winnebago County jail.

Defendant argues on appeal that the prosecutor's comments raised the inference that defendant had a burden to present witnesses and evidence to support her innocence. Defendant argues that the State referral to Coleman's failure to testify was improper because she was equally inaccessible to the State and to defendant. Defendant does not argue that the assistant State's Attorney improperly referred to the failure of witnesses Hopson and Davis to testify.

■■ ■ It is improper for the prosecutor to comment on defendant's failure to call a nonalibi witness. (*People v. Adams* (1985), 109 Ill. 2d 102, 120, *cert. denied* (1986), 475 U.S. 1088, 89 L. Ed. 2d 730, 106 S. Ct. 1476.) The jury may consider defendant's failure to produce witnesses who could testify to material facts if it is manifest that it is within the power of the accused to produce such witnesses and that such witnesses are not accessible to the prosecution. (*People v. Munday* (1917), 280 Ill. 32, 42.) Comments on the failure of defendant to produce witnesses equally available to the State is improper because they unfairly tend to shift the burden of proof to the accused. (*People v. Lee* (1984), 128 Ill. App. 3d 774, 782, *aff'd* (1986), 111 Ill. 2d 454.) Where a witness is equally unavailable to both sides, it is within the court's discretion to refuse to allow argument on the missing witness. (*U.S. v. Keplinger* (7th Cir. 1985), 776 F.2d 678, 703, *cert. denied* (1986), 476 U.S. 1183, 91 L. Ed. 2d 548, 106 S. Ct. 2919.) Under an alibi exception, when defendant asserts an alibi defense and names persons in support of an alibi, the prosecutor may comment upon any failure to call those persons because the witnesses were interjected

into the case by defendant and are deemed unavailable to the prosecution. *People v. Saunders* (1984), 122 Ill. App. 3d 922, 930; *People v. Kubat* (1983), 94 Ill. 2d 437, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 174, 104 S. Ct. 199.

■ The State argues that although this case does not involve an alibi, the prosecutor may similarly comment on the failure to call non-alibi witnesses. However, the cases relied upon by the State, *People v. Depner* (1980), 89 Ill. App. 3d 689, *People v. Plum* (1976), 44 Ill. App. 3d 922, and *People v. Pullum* (1973), 10 Ill. App. 3d 745, *rev'd on other grounds* (1974), 57 Ill. 2d 15, are distinguishable. *Depner* involved an alibi witness. *Plum* involved a defendant's right to comment on the absence of State's witnesses. *Pullum* stated broadly that where the defendant injects into the case the names of people who presumably would support his theory of the case, the prosecutor may comment on the failure of the defense to produce those people as witnesses. That case did not state which witnesses were referred to in closing argument, but defendant testified that on the day of the armed robbery he was out of State and that someone drove him back to Chicago. The failure to have such a witness testify would fall under the alibi exception not applicable in the instant case.

■ The State further argues that Coleman was more accessible to defendant because she was an acquaintance of defendant's and their mutual friend was Davis. However, the State does not dispute that the defense counsel stated that he could not find Coleman. Furthermore, the test for permissibility of comment on a defendant's failure to produce witnesses is not merely whether the witness is more accessible to defendant than he is to the State. It must be clear that the witness was *readily accessible* to the defense and not equally accessible to the prosecution. *People v. Holman* (1984), 103 Ill. 2d 133, 151, *cert. denied* (1985), 471 U.S. 1050, 84 L. Ed. 2d 347, 105 S. Ct. 1204.

■ The State next argues that even were the witnesses equally accessible or equally inaccessible, permissible comment on defendant's failure to produce witnesses is not limited to situations where the witnesses are unavailable to the State. The State relies upon *People v. Wilson* (1978), 66 Ill. App. 3d 330, and *People v. Williams* (1968), 40 Ill. 2d 522, *cert. denied* (1969), 393 U.S. 1123, 22 L. Ed. 2d 129, 89 S. Ct. 1004, for this proposition. In *Williams*, the court found that the State's comment on the failure of defendant to produce physical evidence was proper. Nevertheless, the *Williams* court made the broad statement, relying upon *People v. Lion* (1957), 10 Ill. 2d 208, that the State can comment on the defendant's failure to produce a witness

presumably under the control of defendant who could throw light upon a vital matter. *Lion,* however, dealt with the alibi-witness exception.

*Wilson* also contained broad language, *i.e.*, "[i]f other evidence tends to prove the defendant's guilt and he fails to bring in evidence within his own control of an explanation or refutation, this omission is a *** legitimate subject of comment by the State's Attorney." (*People v. Wilson* (1978), 66 Ill. App. 3d 330, 337.) While *Wilson* did not involve defendant's failure to call an alibi witness, it relied upon alibi-exception cases for its broad statement. The State specifically refers to the language of *Wilson* that the permissibility of comment "is not limited to situations where the potential witnesses are unavailable to the prosecution." (66 Ill. App. 3d 330, 337.) However, the court's citation of authority for that proposition, *People v. Parker* (1976), 40 Ill. App. 3d 597, relies upon authority (*People v. Poole* (1970), 121 Ill. App. 2d 233, 240-41) which in turn relies upon the alibi-exception cases. Also, *Parker* is distinguishable because the comment on the failure to call a nonalibi witness was permitted on the grounds that the prosecutor's comment was provoked by the defense's implication in closing argument that the missing witness' testimony would corroborate defendant's version. Finally, we note that the State does not argue why the general rule prohibiting comment on the failure of defendant to produce nonalibi witnesses where it is not in the power of defendant to produce those witnesses should not be followed here as it was not in *Wilson.*

■ The State finally argues that even if the prosecutor's comments were in error, such error was harmless. The State argues that the testimony of the bank teller and the owner of the check was sufficient to convict defendant. Improper comments are not reversible error unless they constitute a material factor in conviction or result in substantial prejudice to the accused (*People v. Nodal* (1980), 89 Ill. App. 3d 538, 541) and are harmless error in the case of overwhelming evidence against defendant. (*People v. Franklin* (1981), 93 Ill. App. 3d 986, 994.) The State was improperly permitted to twice refer to the failure of Coleman to testify. Defendant's defense that she did not know that the check was forged was supported by her testimony that Coleman led her to believe that Leavy was Coleman's grandfather who endorsed the check. Defendant had testified that she was gone a few minutes between visits at the bank, while the bank teller believed defendant was only gone for a short time. Thus the evidence that defendant knew the check was forged was close: should defendant's estimation of the time be believed, the inference from her testimony

that she believed that Coleman had obtained the genuine signature of her "grandfather" Leavy before returning to the bank a second time would be bolstered. If the bank teller is believed that defendant returned shortly afterwards, defendant's version that Coleman had her grandfather endorse the check to defendant before they returned to the bank would not be credible. As Coleman's testimony would have been relevant to the crucial issue of defendant's knowledge of the forgery, the State's comments on Coleman's failure to testify substantially prejudiced defendant.

The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded.

Reversed and remanded.

HOPF and INGLIS, JJ., concur.