THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EARL T. STORMS, Defendant-Appellant.

Second District   No. 2—90—0100

Opinion filed March 10, 1992.—Rehearing denied March 31, 1992.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, Daniel D. Yuhas, of State Appellate Defender's Office, of Springfield, and Joseph Michael Williams, of St. Charles, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Earl T. Storms, defendant, was convicted of residential burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—3) following a jury trial in the circuit court of Lake County. Judgment was entered on the verdict, and defendant was sentenced to a term of 19 years' imprisonment and 3 years of mandatory supervised release. On appeal, Storms contends that he is entitled to a judgment *n.o.v.* or, alternatively, a new trial on the basis that: (1) he was not proved guilty beyond a reasonable doubt; (2) the State made improper and prejudicial comments in closing argument; and (3) the trial judge should have been disqualified because he prosecuted defendant in a prior burglary case. Storms further contends that he is entitled to a remand for resentencing on the basis that: (1) the sentence of 19 years' imprisonment is excessive; (2)

the court abused its discretion in sentencing defendant as a Class X offender; and (3) the court failed to consider mitigating factors in sentencing. We affirm in part, vacate in part, and remand.

The record reveals that on September 19, 1989, around noon, defendant entered the residence of Edward and Mary Kasper in Waukegan, Illinois, by removing a screen and climbing through a window. Employees of Ted's Log Cabin restaurant across the street observed defendant both prior to and following his entry into the home and notified the police because Mary Kasper, the owner of the residence and an employee at the restaurant, was on vacation. When Waukegan police officers arrived on the scene, defendant walked from the residence and voluntarily surrendered. He reported that he did not intend to burglarize the residence but, due to his intoxicated state, mistakenly entered the residence thinking it was his Aunt Margaret's house. Carl Nelson, one of the investigating officers, observed no items moved in the house, no stolen items, and no burglary tools in defendant's possession.

The Criminal Code of 1961 defines residential burglary as "knowingly and without authority enter[ing] the dwelling place of another *with the intent to commit therein a felony or theft."* (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 38, par. 19—3.) Defendant first contends that he was not proved guilty beyond a reasonable doubt because the evidence failed to establish that he possessed such intent. When faced with a challenge to the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Campbell* (1992), 146 Ill. 2d 363, 374; *People v. Pintos* (1989), 133 Ill. 2d 286, 291; *People v. Young* (1989), 128 Ill. 2d 1, 49.) Therefore, a reviewing court will not substitute its judgment for that of the trier of fact on questions involving the sufficiency of the evidence and will not reverse a criminal conviction unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of guilt. *People v. Collins* (1985), 106 Ill. 2d 237, 261; *People v. Sehr* (1986), 150 Ill. App. 3d 118, 122.

■ Defendant's intent to commit a theft or felony is an essential element of residential burglary, the offense for which he was charged. (Ill. Rev. Stat. 1989, ch. 38, par. 19—3.) In the absence of inconsistent circumstances, the fact finder may infer the requisite intent to commit theft from proof of an unlawful breaking and entry into a building containing personal property that could be the subject of larceny.

(*People v. Johnson* (1963), 28 Ill. 2d 441, 443; see also *People v. Boguszewski* (1991), 220 Ill. App. 3d 85, 88.) However, the specific intent to commit a theft or felony cannot be proved merely by the entry itself. (*People v. Toolate* (1984), 101 Ill. 2d 301, 308.) Such an inference of intent is permissible only when the circumstantial evidence of the facts surrounding the occurrence, including the time, place, and manner of entry into the premises, the defendant's activity within the premises, and any lack of alternative explanations for his presence, justifies this conclusion. *People v. Richardson* (1984), 104 Ill. 2d 8, 13; *People v. Ybarra* (1987), 156 Ill. App. 3d 996, 1002-03.

■ Juan Sostre, one of the employees of the restaurant, testified that he observed defendant walking around the front and back of the residence and in the alley prior to his entry through the window. Within 10 seconds, Storms was observed by several of the State's witnesses walking from room to room inside the home and subsequently sitting on the front porch. Although he was not observed rustling through drawers or closets, did not possess burglary tools, and no items of personal property had been taken, we reject the argument that an intent to commit theft cannot be inferred because nothing was taken. (See *Sehr*, 150 Ill. App. 3d at 123-24.) We also reject defendant's argument that his lack of an attempt to flee when he became aware the police had been contacted and voluntary surrender are "inconsistent" with an intent to commit a theft. The jury could very well have concluded that Storms did not take any property either because there was nothing to take that was sufficiently portable or because he was apprehended before he had such an opportunity. It was also reasonable to find that Storms did not attempt to flee because he had a limited chance for a successful escape given that several restaurant employees were waiting outside the home for the police to arrive. See *Ybarra*, 156 Ill. App. 3d at 1004-05.

■ Furthermore, when Sostre confronted Storms, he explained that he was intoxicated and under the mistaken belief that he was in the home of Aunt Margaret. However, the only evidence that Storms knew anyone he referred to as Aunt Margaret was the testimony of his childhood friend, Charles Cruz, who stated that Margaret Martinez, his own aunt, lives in Waukegan and Storms refers to her as Aunt Margaret. Even assuming the truth of defendant's explanation, popping a screen and climbing through the window "is not the typical behavior of one who wishes to see an acquaintance but does not receive an answer when knocking at the door to his residence." (*In re P.A.G.* (1990), 193 Ill. App. 3d 601, 603.) Therefore, we find his

explanation insufficient to rebut the inference of theft created by his unlawful entry.

■ Because burglary is a specific intent crime, defendant's intoxication could be a valid defense if he was so drunk that he did not know what he was doing and consequently could not have formed an intent to commit theft. However, the jury was free to reject this defense, particularly in view of conflicting testimony as to how many drinks defendant had consumed and how drunk he appeared to be. (*Richardson*, 104 Ill. 2d at 14.) Even though proof of defendant's guilt depended on circumstantial evidence, it was the prerogative of the jury to assess the credibility of the witnesses and reject defendant's explanation of the crime. (*Collins*, 106 Ill. 2d at 261-62.) Accordingly, we find the evidence sufficient for a reasonable jury to find, beyond a reasonable doubt, that every element of the burglary was proved.

Defendant next objects to the State's comments regarding the failure to produce Aunt Margaret as a witness. The first comment was made during the State's closing argument, to which there was no objection:

> "The second thing he [defendant] tells two of them [restaurant employees]—he goes, 'I was looking for my Aunt Margaret's.' 'I'm looking for my aunt's house.' Well, I don't know who his aunt is, but I know he had a witness that came in here this morning, Chuck Cruz, and he didn't tell you where the aunt was."

The following reference to the aunt occurred during the State's rebuttal:

> "How do we know Earl Storms thought it was okay to go in? Because Chuck Cruz gets up and says he has an Aunt Margaret and an Aunt Tina? Maybe I missed it and I'm wrong. I didn't hear if they were from Waukegan. Even if they were from Waukegan, his Aunt Margaret and Aunt Tina—."

Defense counsel objected to the statement, arguing that it shifted the burden of proving the existence of Aunt Margaret to defendant. The court overruled the objection, but admonished counsel not to go into the matter further. Defendant contends that, by virtue of the remarks, the State impermissibly shifted the burden of proof to the defense resulting in the denial of a fair trial. We do not agree.

■ Generally, it is improper for the prosecutor to comment on the defendant's failure to call a nonalibi witness. (*People v. Adams* (1985), 109 Ill. 2d 102, 120.) However, "where a defendant injects into the case the name of an alibi witness and then fails to call the witness, the prosecutor may legitimately comment on the lack of such ev-

idence although it may not be relied upon as proof of the charge."
(*People v. Kubat* (1983), 94 Ill. 2d 437, 498; see also *People v. Blakes*
(1976), 63 Ill. 2d 354, 359-60; *People v. Wills* (1986), 151 Ill. App. 3d
418, 422-23.) As stated in *People v. Williams* (1968), 40 Ill. 2d 522,
528:

> "[The jury] may properly consider any facts developed in the
> trial from which a reasonable inference may be drawn for or
> against either party. For instance, if it is developed in a trial
> that a witness exists, presumably under the control of a defend-
> ant, who can throw light upon a vital matter, and he is not pro-
> duced, certainly a jury may fairly consider that fact, and, like-
> wise, counsel would have a legitimate right to comment
> thereon."

Nevertheless, the remarks do not constitute reversible error unless
they constitute a material factor in the conviction or result in substan-
tial prejudice to the accused. *Wills*, 151 Ill. App. 3d at 423; *People v.
Nilsson* (1970), 44 Ill. 2d 244, 248; *People v. Beller* (1979), 74 Ill. 2d
514, 526.

In this case, the existence of Aunt Margaret was first introduced
at trial during the opening statement by the defense. Counsel in-
formed the jurors that they would hear testimony that Storms told
the witnesses, who observed his entry, that he was looking for his
aunt's house. Later, Juan Sostre, one of the restaurant employees,
stated both on direct and cross-examination that Storms told him he
was in the residence because it was Aunt Margaret's house. The last
reference to the aunt occurred when Charles Cruz testified that he
has an aunt named Margaret Martinez living in Waukegan whom
Storms refers to as Aunt Margaret.

We believe the remarks by counsel were within the bounds of
proper argument. A prosecutor may base his argument on the evi-
dence presented or on reasonable inferences therefrom. (*People v. Al-
exander* (1989), 184 Ill. App. 3d 855, 863.) Because the existence of
the aunt was injected by the defense to support its theory that
Storms did not intend to commit a theft or felony, but merely in-
tended to visit and was testified to during trial, the State's remarks
were proper under *Kubat* and its progeny. See also *Alexander*, 184 Ill.
App. 3d at 864.

In the State's rebuttal, the prosecutor stated that "[t]here
was no testimony elicited in these two days of trial that anyone knew
that he (Storms) was in this building." The context of this statement
related to the period prior to the restraint of Storms by the employ-
ees of the restaurant. Nevertheless, defendant alleges that this is a

misstatement of the evidence because Juan Sostre testified he saw Storms prior to his entry into the residence. The record reveals that this statement was made on the State's rebuttal in response to defense counsel's closing argument which attempted to prove that Storms did not commit burglary because he knew he was observed prior to his entry and aborted the intent to commit a theft at that point. A defendant cannot complain of a prosecutor's statements made on rebuttal when his own argument invited those statements. (*Alexander*, 184 Ill. App. 3d at 864; *People v. Rader* (1988), 178 Ill. App. 3d 453, 466.) We find this statement to be accurate and responsive. Consequently, there was no prejudicial error in allowing the statement.

■ Next, defendant contends that he is entitled to a new trial because of an alleged appearance of impropriety by the trial judge. Initially, this case was assigned to Judge William Block. However, defendant moved for substitution of judges pursuant to section 114—5(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 114—5(d)) on the basis that he could not receive a fair trial before Judge Block because he sentenced defendant to the Department of Corrections on two prior occasions. Consequently, Judge Block reassigned the case to Judge Peter Trobe. It was determined after trial but before any hearing on post-trial motions or sentencing that Judge Trobe served as assistant State's Attorney in a prior burglary case where Storms was one of the defendants. At this point, defendant filed a post-trial motion for a judgment *n.o.v.* or, alternatively, for a new trial on the basis that he was denied a fair trial before Judge Trobe because of his involvement in the prior case.

A hearing was held before Judge Block, the supervising judge of the criminal division, without objection by the defense. Judge Block summarized the extent of Judge Trobe's involvement as follows: Storms was arrested for burglary in March of 1980; on July 22, 1980, he failed to appear in court; there was a bond forfeiture where Trobe acted as assistant State's Attorney, and a warrant was issued for Storms' arrest; on July 24, 1980, Storms was sentenced to three years' probation and ordered to pay $200 plus court costs; on March 15, 1981, Storms was arrested for unlawful possession of cannabis; on March 16, 1981, Trobe appeared for the State on a petition for revocation of probation, to which Storms failed to appear, and a warrant was again issued; on March 20, Storms surrendered, and his motion to reinstate bond was denied; on March 21, a hearing was held on Trobe's petition to revoke probation, and defendant was found guilty of contempt. Considering the cases of *People v. Del Vecchio* (1989),

129 Ill. 2d 265, *People v. Lopez* (1989), 187 Ill. App. 3d 999, *People v. Lipa* (1982), 109 Ill. App. 3d 610, and *People v. Burnett* (1979), 73 Ill. App. 3d 750, Judge Block determined that the extent of Judge Trobe's involvement did not give the appearance of impropriety and sent the matter back to Judge Trobe for hearing on the other matters asserted in defendant's post-trial motion and for sentencing.

We find Judge Block's reliance on the aforementioned cases somewhat misplaced, in that they determined whether the judge at issue should have recused himself under the following standard for disqualification in effect at the time of the hearings:

> "A judge shall not participate in any case in which he has previously acted as counsel. He cannot rid himself of this responsibility by consent of counsel or the parties to the case." (87 Ill. 2d R. 67(c).)

Based on this rule, the courts in *Del Vecchio, Lipa,* and *Burnett* concluded that the judge's prior actions for the State's Attorney's office were merely supervisory and recusal was not required. As stated in *Del Vecchio,* "[m]erely having a previous involvement with a defendant does not, *per se,* require disqualification." (*Del Vecchio,* 129 Ill. 2d at 277.) For a judge to have "acted as counsel" within the meaning of the statute, he must have been actually involved in the prosecution or defense of a defendant's case. *Lopez,* 187 Ill. App. 3d at 1008; *Burnett,* 73 Ill. App. 3d at 754.

The cases Judge Block relied on are instructive as to the degree of involvement necessary for disqualification but not dispositive because they interpreted a rule no longer in effect. In 1987, our supreme court adopted the Code of Judicial Conduct (134 Ill. 2d Rules 61 through 67). Rule 63(C)(1) replaced the aforementioned rule and specifies the following situations in which a judge should recuse himself:

> "C. Disqualification.
>
> (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where
>
> (a) he has a personal bias or prejudice concerning a party or his lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding; [or]
>
> (b) he served as lawyer in the matter in controversy \*\*\*; [or]
>
> (c) he was, within the preceding three years, associated in the private practice of law with any law firm or lawyer currently representing any party in the controversy \*\*\* or, for

a period of seven years following the last date on which he represented such a party, he represented any party to the controversy while he was an attorney engaged in the private practice of law." (134 Ill. 2d Rules 63(C)(1)(a), (C)(1)(b), (C)(1)(c).)

Although the new rule supposedly does not "depart radically from the rules it replaces" and "simply sets out in greater detail the duties and responsibilities of a judge and what situations mandate disqualification," the changes are distinct. (See Ill. Ann. Stat., ch. 110A, par. 63, Supplement to Historical & Practice Notes, at 27 (Smith-Hurd Supp. 1991).) The former rule prohibited a judge from ever being involved in a matter in which a former client is a party. The new rule, however, provides for mandatory recusal both when the judge "served as lawyer in the matter in controversy" (134 Ill. 2d R. 63(C)(1)(b)) and if he represented one of the parties within the past seven years (134 Ill. 2d R. 63(C)(1)(c)). (See also Ill. Ann. Stat., ch. 110A, par. 63, Supplement to Historical & Practice Notes, at 28-29 (Smith-Hurd Supp. 1991).) Unfortunately, we find no case law interpreting these provisions in conjunction with each other.

Although the rule has been changed, we deem the rationale of *Del Vecchio* applicable as requiring recusal when the judge played a meaningful role in prosecuting or defending a party to the current matter. (See *People v. Thomas* (1990), 199 Ill. App. 3d 79, 90.) We determine that Judge Trobe's actions in prosecuting the 1980 burglary against Storms were not merely supervisory, but amounted to "serving as a lawyer," as his participation in probation revocation proceedings amount to substantive representation. His involvement in the 1980 case became directly relevant to the "matter in controversy," the present case, at the time of *sentencing*, because the portion of defendant's prior criminal record involving Judge Trobe as prosecutor could be presented in aggravation. Additionally, Judge Trobe's impartiality may be reasonably questioned, because of his personal knowledge of the 1980 burglary prosecution. Therefore, Judge Block ought to have assigned the sentencing hearing to a different judge.

However, we find no evidence that any bias by Judge Trobe with respect to Storms existed either during the trial or the hearing on the post-trial motion. Since, as Judge Block found, neither party remembered the prior involvement until after the completion of the trial, any rulings by Trobe during trial cannot be attributed to prejudice against Storms because the prior prosecution was not a "matter in controversy" either during the trial or during the hearing on the post-trial

motion. Therefore, we find that Judge Trobe should not have been disqualified from hearing the trial and post-trial motions.

However, we remand this cause to the trial court for a new sentencing hearing. In light of this ruling, we deem it unnecessary to address any of the issues defendant raises regarding his sentence. Judge Trobe and Judge Block shall not be further involved for any purpose other than a transfer to the chief judge for reassignment. Accordingly, the judgment of the circuit court of Lake County is affirmed in part and vacated in part, and the cause is remanded for further proceedings in conformance with this opinion.

Affirmed in part; vacated in part and remanded.

GEIGER and NICKELS, JJ., concur.