193 Ill. App.3d 601 (1990)
550 N.E.2d 32
In re P.A.G., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
P.A.G., Respondent-Appellant).
No. 2-88-0311.
Illinois Appellate Court  Second District.
Opinion filed January 24, 1990.
G. Joseph Weller and Francine Harrison, both of State Appellate Defender's Office, of Elgin, for appellant.
Fred L. Foreman, State's Attorney, of Waukegan, and Georgette D. Nabhani, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.
Judgment affirmed.
JUSTICE DUNN delivered the opinion of the court:
Respondent, P.A.G., a minor, appeals from the finding of the circuit court of Lake County that he committed the offense of attempted residential burglary. On appeal, respondent contends the evidence was insufficient to establish a requisite element of the charged offense: that respondent intended to commit a felony or theft within the dwelling he allegedly attempted to break into and enter. The State argues *602 that it presented sufficient evidence defendant intended to commit a theft inside the dwelling. We affirm.
Patty Zapata testified that she lives at 2312 Hebron in Zion with her husband and three children. When she returned home on the evening of September 28, 1987, she noticed that the kitchen window and screen were open and that some tomatoes which had been on the window sill were scattered across the floor. Zapata testified that when she left home earlier that day the window was closed, although she was not sure if it was locked. She testified further that respondent had previously known her sons and had been in the backyard of her property. At the time of the incident, Zapata's sons were no longer friendly with respondent because respondent had gotten them into trouble on a certain occasion.
Stephanie Morey testified that she resides at 2308 Hebron in Zion and is able to view the back entrance of the Zapata home from her house. At about 2 p.m. on September 28, 1987, she heard dogs barking. She looked outside and saw two individuals at the back door of the Zapata residence. They knocked at the door and then looked inside a small window when nobody answered the door.
The two individuals then began pushing at the back door with their shoulders. They went to a window on the north side of the house and were pulling at it but were not able to get it out. The two individuals then tried to push in the door again but were unsuccessful. They left for a little while but then returned to the Zapata home and tried to push in the back door again. At this point, Morey called the police. She identified respondent as one of the two individuals she saw at the Zapata residence at this time.
Larry Booth, a detective with the Zion police department, testified that he spoke to respondent at the interview room of the Zion police station at about 4:45 p.m. on the date of the alleged offense. Booth asked respondent what had been going on at Aaron Centano's house. Aaron Centano was the son of Patty Zapata and a prior acquaintance of respondent. Respondent denied being at the house that day. When Booth told respondent that an eyewitness had identified him, respondent admitted he had been there but stated his companion had tried to enter the window. When Booth explained the statement of the witness, respondent admitted he had placed a lawn mower underneath the window, climbed on it and raised the window and screen. Respondent put his head inside the window but ran down an alley after he heard a dog barking.
After the trial court denied his motion for a directed verdict, respondent testified. Respondent stated that on the afternoon in question, *603 he and a companion decided to go over to Aaron Centano's house to see how he was doing. Respondent had not seen Aaron in over a year. They went to the house, knocked on the door, and nobody answered. They left after a few minutes. Respondent and his companion returned shortly thereafter, knocked on the back door, and then knocked on the front door. Nobody answered. Respondent testified that he then stepped on a lawn mower which was under a window. He saw a big dog inside. Respondent told his companion no one was home. The companion stated that someone next door was watching them. Respondent then knocked on the door one more time. The two minors left after receiving no answer. Respondent was apprehended by the police shortly thereafter while walking down an alley.
The trial court found that respondent had committed attempted burglary and some other offenses which are not the subject of this appeal. Respondent was placed on probation until March 23, 1990. The instant appeal ensued.
 1 We disagree with respondent's contention that there was insufficient evidence that he intended to commit a theft at the Zapata residence. In the absence of inconsistent circumstances, evidence of unlawful breaking and entry into a building where a theft could occur gives rise to an inference of an intent to commit theft. (People v. Johnson (1963), 28 Ill.2d 441, 443; People v. Lobdell (1988), 172 Ill. App.3d 26, 29; People v. Ybarra (1987), 156 Ill. App.3d 996, 1004.) Such an inference is also proper in an attempted burglary case if there is proof of an attempted unlawful breaking and entry, and there are no inconsistent circumstances. See People v. Semma (1974), 19 Ill. App.3d 776, 778.
Stephanie Morey's testimony that respondent and his companion tried to push in the Zapatas' back door several times and were pulling at a window on the north side of the house was sufficient to establish that respondent attempted unlawfully to break into and enter the home, thus giving rise to the inference that he intended to commit theft. Although one of the residents, Aaron Centano, was a prior acquaintance of respondent and respondent asserts he merely went to the home to see how Aaron was doing, we do not believe the circumstances were inconsistent with the State's claim that respondent intended to commit a theft. By respondent's own admission, he had not seen Aaron Centano for over a year, making it highly unlikely that he would suddenly decide to just show up at Aaron's residence. Moreover, attempting to break in a door is not the typical behavior of one who wishes to see an acquaintance but does not receive an answer when knocking at the door to his residence.
*604  2, 3 Additionally, according to the testimony of Detective Booth, respondent falsely stated that he had not even been at the Zapata residence, changed his story by admitting he had been there but his companion had tried to enter the window, not him, and finally admitted he had looked through the window. False exculpatory statements are admissible evidence of the accused's consciousness of guilt. (People v. McQueen (1983), 115 Ill. App.3d 833, 837.) Respondent's false exculpatory statements to Detective Booth are therefore further evidence of his criminal intent. The evidence was sufficient for the trial court to conclude that respondent intended to commit a theft at the Zapata home and had therefore committed the offense of attempted residential burglary.
The judgment of the circuit court of Lake County is affirmed.
Affirmed.
UNVERZAGT, P.J., and INGLIS, J., concur.