THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THOMAS DEPNER, Defendant-Appellant.

Second District No. 79-661

Opinion filed October 16, 1980.—Rehearing denied November 21, 1980.

Mary Robinson and Donna R. Palm, both of State Appellate Defender's Office, of Elgin, for appellant.

Theodore J. Floro, State's Attorney, of Woodstock (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

Defendant appeals from his convictions of two counts of theft over $150 (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)) for which he was sentenced to two concurrent terms of five years.

On May 31, 1975, defendant was charged by complaint with theft over $150. On June 17, 1975, the grand jury indicted defendant for two counts of theft over $150. One count was for theft of a boat, the other, for theft of a boat trailer.

Late in the evening of May 30, 1975, Officer Patrick Palmer was patrolling the area of Commercial and Elm Streets in Richmond, Illinois. He had patrolled the same area 45 minutes earlier. This time, however, he noticed a vehicle parked alongside a building in the area of Ed Wendt's Marina. That vehicle had not been there earlier. Attached to the vehicle was a boat and trailer.

Officer Palmer testified that he had been heading northbound on Commercial and was about to turn right, eastbound, onto Elm, when he noticed the vehicle was moving without lights on. He therefore put his squad car in reverse gear and "stepped on it" to block the vehicle's path. The squad car then died but coasted back a few feet into an angular position, its front part in the northbound lane of Commercial, its back part in the southbound lane of Commercial. The vehicle, a truck, pulled up to the front of his squad car and stopped. He observed two occupants in the truck. Officer Palmer testified that there was a vapor lamp on the northeast corner of Elm and Commercial which lit up the left side of the cab of the truck. He was able to see the driver for about 30-45 seconds but he could not see the passenger. The driver had long hair and looked between the ages of 22 and 24. Officer Palmer attempted to get out of the car. His left leg was outside the door when the truck came forward, crushing his leg between the door and the side of the car. He yelled stop and fired a shot into the air. The occupants of the truck exited the vehicle and ran toward the east. Officer Palmer attempted to follow them but his leg was injured too badly to do so and he fell.

Another officer, Officer Russo, who lived nearby, arrived at the scene. Sergeant George Corson also arrived and spoke with Palmer before Palmer was taken to the hospital.

Sergeant Corson testified that Palmer told Corson, at the time of the incident, that the lights of the truck had been turned on.

Bernice Lachner identified the boat which had been taken from Wendts. She described it, recognized it in a picture, and proved its

ownership and value by producing a bill of sale containing the serial number. She and her husband purchased the boat in July 1969.

Henry Gram, sales manager for Ed Wendt Boat & Motor Co., testified that the boat and trailer were parked adjacent to the storage building, that the boat was a storage boat being prepared for summer delivery, and that the boat was "sitting on the trailer, parked off to the side." He produced records showing that the trailer was owned by Ed Wendt's Company. These records contained the serial and model numbers. Mr. Gram also testified as to the value of the trailer.

On appeal, the defendant first contends that he was not proven guilty beyond a reasonable doubt where the testimony of the State's sole identification witness, Officer Palmer, was materially impeached by another police officer, Sergeant Corson, concerning the condition under which an attempt at identification of defendant occurred.

Palmer testified that the truck he observed near Wendt's Marina had no lights on and that he became suspicious when the vehicle began to move without the lights on. He therefore put his car in reverse and began to back up southward on Commercial, to block the truck, but his squad car died. The stalled squad car was positioned in an angular fashion, the back part being in the southbound lane of Commercial, the front part in the northbound lane. The squad car, therefore, partially blocked the truck which had moved forward (south) toward the squad car. Officer Palmer stated that, on the northeast corner of Elm and Commercial, there was a very strong vapor light which provided sufficient lighting for him to observe defendant and that he was able to observe defendant for approximately 30-45 seconds.

On cross-examination, Palmer stated that he didn't recall whether the truck's headlights ever went on at the time the truck pulled up to the squad car but, even if they had, due to the angle of the squad car, they would not have affected his ability to see defendant who was in the driver's seat of the truck. The vapor light positioned behind the truck, although not directly behind it, illuminated the left side of the cab of the truck, but there was a dark spot on the right side of the cab so Officer Palmer could not see the passenger. When asked if at any time he told Sergeant Corson that, at some point during the incident, he noticed that the truck's lights had been turned on, Officer Palmer stated "I don't believe so."

Sergeant Corson was called as a court's witness. He had been called upon the scene by Palmer. After refreshing his memory from his police report, he answered affirmatively to this question:

> " Q. * * * [D]id Officer Palmer tell you he was making business checks of Commercial Street and was about to check the front of Wendt's Boats and Motors Incorporated when he noticed a truck

which at this time turned its lights on and started southbound on Commercial?"

Later, Sergeant Corson again testified that he recalled Officer Palmer telling him that the truck lights were turned on[1] and the vehicle started south on Commercial. Corson also stated that Palmer told him the driver of the truck had light colored, long hair and appeared to be 22-24 years of age.

It is defendant's theory that, since defendant was in fact older[2] than 24 at the time of the incident and that Officer Palmer admitted, at trial, that defendant looked younger on the evening of the theft, one may conclude that Palmer's opportunity to observe the driver occurred under unsatisfactory conditions. Defendant argues, had the lights of the truck been turned on, they would have shone directly into the squad car and impeded the officer's ability to see into the cab, since a truck has a greater ground clearance than a passenger automobile. However, as previously stated, Officer Palmer testified that, even if the truck's lights had been on, due to the angle of the squad car, they would not have impeded his ability to see defendant.

The conflict between the testimonies of Officer Palmer and Sergeant Corson presents a question of credibility. Determining the credibility of witnesses and resolving conflicts in evidence are functions of the jury in a criminal prosecution. (*People v. Vriner* (1978), 74 Ill. 2d 329, 342.) A reviewing court may not substitute its judgment for that of the jury on questions regarding the credibility of witnesses. *People v. Jackson* (1979), 72 Ill. App. 3d 231, 238.

■■ Defendant's further argument that Palmer's description of defendant was unsatisfactory because he did not describe defendant in more detail is without merit. Inability to describe any particular physical feature does not destroy the credibility of an identification. (*Cf. People v. Hamilton* (1980), 81 Ill. App. 3d 297, 300.) Identification is not usually made by distinguishing separate features but by the total impression made upon the witness. (*People v. Smith* (1977), 52 Ill. App. 3d 583, 587, *cert. denied* (1978), 436 U.S. 961, 57 L. Ed. 2d 1127, 98 S. Ct. 3080.) Officer Palmer testified that, at the time of the incident, he concentrated on defendant's face and identified defendant based upon defendant's facial features. Although he could not remember any specific details regarding defendant's description, it was Officer Palmer's total impression of defendant that was sufficient to identify defendant. His estimate of defendant's age,

---

[1] An examination of Officer Corson's police report does not disclose any reference to Officer Palmer's alleged statement regarding the truck's lights. Since Officer Palmer's police report also did not contain any reference to the issue, it is the independent memories of these two witnesses which are in conflict on this issue.

[2] Defendant was 34 years of age at the time of trial in 1978, making him 30 at the time of the incident.

being 6-8 years younger than defendant actually was at the time, does not, therefore, suffice to raise reasonable doubt as to defendant's identification.

Defendant's contention that there was no clear retrospective demonstration of Officer Palmer's ability to identify defendant from a group of suspects is also erroneous. Palmer saw defendant at the Richmond police station several days after the crime. Defendant was sitting with three other suspects. Palmer testified that he recognized defendant at that time.

Even if defendant's contentions regarding Palmer's identification of him were meritorious, the inability of a witness to describe defendant's particular characteristics is a matter for the jury to consider in determining the credibility of the witness but does not require acquittal. (*People v. Hamilton* (1980), 81 Ill. App. 3d 297, 300.) While it is true that Officer Palmer was the sole identification witness in this case, a reviewing court will not set aside a guilty verdict unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt as to the guilt of the accused. (*People v. Trump* (1978), 62 Ill. App. 3d 747, 750; *People v. Lanzotti* (1978), 61 Ill. App. 3d 451, 454. See *People v. Vriner* (1978), 74 Ill. 2d 329, 342, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.) We do not find the evidence in this case to be contrary to the verdict or so unsatisfactory as to require reversal.

Defendant next contends that the prosecutor's reference, in closing argument, to defendant's failure to call, as a witness, Herman Dragel, was prejudicial and sufficient to deny defendant a fair trial. We disagree.

■■ While it is true that defendant exercised his right not to present any evidence in his own behalf, Dragel's name was adduced only once and that was in response to cross-examination by defense counsel of the State's witness, James Depner, defendant's brother. The truck used on the evening in question to haul the boat and trailer was owned by James Depner. Dragel's name was adduced by defense counsel in an effort to cast doubt upon defendant's involvement in the crime and to intimate that defendant could not have had access to the truck. James Depner testified that defendant and Herman Dragel arrived at his house at approximately 7:30-8 p.m. on the evening the incident occurred. He further testified that he had been in a motorcycle accident and, throughout his period of recovery, defendant and Dragel had been coming over every night to help him bathe. He stated that defendant left the keys to the truck in James' possession. Thus, testimony by Dragel could have corroborated James Depner's testimony as well as provided information as to defendant's whereabouts on the evening of May 30, 1975. The State has a right to comment on defendant's failure to call a witness whose testimony could support his case. *People v. Plum* (1977), 44 Ill. App. 3d 922, 925.

■■ In addition, in his answer to the State's discovery motion, the

defendant set forth, as a possible defense, an alibi, and included Herman Dragel's name and address as one of defendant's potential witnesses. "[W]here the defendant injects into the case his *activities with potential witnesses during a particular period of time*, ostensibly for the purpose of establishing an alibi * * *, his failure to produce such witnesses is a proper subject of comment [by the prosecutor]." (Emphasis added.) *People v. Stephens* (1974), 18 Ill. App. 3d 971, 979.

Finally, defendant contends that he was erroneously convicted and sentenced for two counts of felony theft arising from the single physical act of towing away a boat and trailer.

■■■ At the outset, it is noteworthy that defendant failed to raise this as error in his post-trial motion. Generally, the failure to raise an issue in a written post-trial motion constitutes a waiver of that issue and it cannot be raised as a ground for reversal on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282.) However, the subject matter of improper concurrent sentences has been considered to be of sufficient constitutional substance to be cognizable as plain error pursuant to Supreme Court Rule 615(a). (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a); *People v. Jackson* (1978), 64 Ill. App. 3d 159, 160, citing *People v. Cox* (1972), 53 Ill. 2d 101, 103.) Therefore, we will consider the issue.

The State asserts that two physical acts were committed, and argues that it can be logically inferred that defendant first took the Wendt trailer and hitched it to the truck, and that it was only after this act was completed that defendant was able to take the boat and put it on the boat trailer. After a careful review of the record, we note that the only evidence on the status of the boat and trailer came from Henry Gram, sales manager for Wendt's, who testified that the boat and trailer had been parked adjacent to the storage building as the boat was being prepared for delivery. He further testified that the boat was being taken out for summer delivery and was parked sitting on the trailer. The defendant committed a single physical act in taking the trailer with the boat on it.

Under the standards set forth by the supreme court in *People v. King* (1977), 66 Ill. 2d 551, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, more than one offense cannot be carved from the same physical act. (66 Ill. 2d 551, 566.) See also *People v. Jackson* (1978), 64 Ill. App. 3d 159, where the court held that two convictions and sentences for felony theft could not stand where the defendant, in one act, simultaneously exerted unauthorized control over several different items of stolen property belonging to two owners.

The trial court erred in entering a separate judgment and imposing a separate sentence on each count of theft over $150 rather than on only one count. Accordingly, we reverse and vacate the judgment of conviction

and sentence imposed against defendant on count II of the indictment charging defendant with theft over $150 of the boat trailer. We affirm the judgment of conviction and sentence imposed on count I of the indictment, charging defendant with theft over $150 of the boat.

Affirmed in part, reversed in part.

WOODWARD and UNVERZAGT, JJ., concur.