# Illinois Official Reports

## Appellate Court

---

*In re G.A.T.*, 2017 IL App (3d) 160702

---

| | |
|---|---|
| Appellate Court Caption | *In re* G.A.T., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. G.A.T., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-16-0702 |
| Filed | March 23, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Grundy County, No. 12-JD-34; the Hon. Robert C. Marsaglia, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part.<br>Cause remanded. |
| Counsel on Appeal | Michael J. Pelletier and Katherine M. Strohl, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jason A. Helland, State's Attorney, of Morris (Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justices Lytton and Schmidt concurred in the judgment and opinion. |

**OPINION**

¶ 1        Respondent, G.A.T., appeals from his adjudication of delinquency and dispositional order of commitment, arguing that (1) four of his delinquency adjudications should be vacated under the one-act, one-crime doctrine and (2) the case should be remanded for resentencing, as the court did not make an express finding that committing respondent to the Department of Juvenile Justice (DJJ) was the least restrictive alternative. We affirm in part, vacate in part, and remand for resentencing.

¶ 2                                 FACTS

¶ 3        On June 26, 2012, a petition for adjudication of wardship was filed, alleging that respondent was delinquent based on 11 counts. Only the following six counts are relevant to the instant appeal:

"COUNT I

Said minor [respondent] is delinquent in that between February 1, 2012 and May 1, 2012, in Grundy County, Illinois, the [respondent] committed the offense of Aggravated Criminal Sexual Abuse (Class 2 Felony) in violation of Chapter 720, Act 5, Section 11-1.60(c)(2)(i) of the Illinois Compiled Statutes (2012) in that the [respondent] who was under 17 years of age, committed an act of sexual conduct with A.N., who was under 9 years of age in that the [respondent] intentionally/knowingly spread A.N.'s butt cheeks apart and inserted his finger into the butt of A.N. for the purpose of the sexual gratification of the victim or [respondent].

\* \* \*

COUNT IV

Said minor [respondent] is delinquent in that between February 1, 2012 and May 1, 2012, in Grundy County, Illinois, the [respondent] committed the offense of Aggravated Criminal Sexual Abuse (Class 2 Felony) in violation of Chapter 720, Act 5, Section 11-1.60(c)(2)(i) of the Illinois Compiled Statutes (2012) in that the [respondent] who was under 17 years of age, committed an act of sexual conduct with A.N., who was under 9 years of age, in that the [respondent] intentionally/knowingly forced victim to place his mouth on [respondent's] penis for the purpose of the sexual gratification of the victim or [respondent].

\* \* \*

COUNT VI

Said minor [respondent] is delinquent in that between February 1, 2012 and May 1, 2012, in Grundy County, Illinois, the [respondent] committed the offense of Sexual Exploitation of a Child (Class 4 Felony) in violation of Chapter 720, Act 5, Section 11-9.1(a)(2)&(c)(3) of the Illinois Compiled Statutes (2012) in that the [respondent] while in the presence of A.N., a person under 17 years of age, and with the knowledge or intent that A.N. would view his acts, exposed and fondled his penis to A.N. for the purpose of the sexual arousal or gratification of the [respondent] or of the victim.

COUNT VII

Said minor [respondent] is delinquent in that between February 1, 2012 and May 1, 2012, in Grundy County, Illinois, the [respondent] committed the offense of Sexual Exploitation of a Child (Class 4 Felony) in violation of Chapter 720, Act 5, Section 11-9.1(a-5)&(c)(3) of the Illinois Compiled Statutes (2012) in that the [respondent] knowingly enticed, coerced or persuaded A.N., a child under 17 years of age, to remove his clothes for the purpose of the sexual arousal or gratification of said [respondent] or the child or both.

### COUNT VIII

Said minor [respondent] is delinquent in that between February 1, 2012 and May 1, 2012, in Grundy County, Illinois, the [respondent] committed the offense of Battery (Class A Misdemeanor) in violation of Chapter 720, Act 5, Section 12-3(a)(2) of the Illinois Compiled Statutes (2012) in that the [respondent] knowingly made offensive contact of an insulting nature with A.N., in that [respondent] spread A.N.'s butt cheeks apart and inserted his finger into his butt.

\* \* \*

### COUNT XI

Said minor [respondent] is delinquent in that between February 1, 2012 and May 1, 2012, in Grundy County, Illinois, the [respondent] committed the offense of Battery (Class A Misdemeanor) in violation of Chapter 720, Act 5, Section 12-3(a)(2) of the Illinois Compiled Statutes (2012) in that the [respondent] who was under 17 years of age, knowingly made offensive contact of an insulting nature with A.N., in that the [respondent] intentionally/knowingly forced victim to place his mouth on [respondent's] penis."

¶ 4 The case proceeded to an adjudicatory hearing at which Nicole N. testified that she was A.N.'s mother and Jason N. was his father. In 2012, she and Jason were separated. A.N. continued to live with Nicole during the separation but would visit Jason at his residence. Jason lived with his girlfriend (Jamie T.) and her son, respondent. Jason's own son (not with Nicole) also lived at the residence.

¶ 5 In May 2012, A.N. said to Nicole that "[respondent] was hurting him." When Nicole asked what he meant, A.N. said, "Mommy, [respondent] is sticking his finger up my butt." A.N. was four years old at the time. Nicole then called Jason and the Department of Child and Family Services (DCFS).

¶ 6 A.N. was nine years old at the time of the hearing. He testified that he was four years old the last time that he saw respondent. A.N. often saw respondent at his father's house when his father, Jason, was dating respondent's mother, Jamie T. When asked whether there was ever anything that respondent did that made him uncomfortable, A.N. said, "He told me I couldn't play his video games unless I sucked his wee-wee." He said "wee-wee" was another term for penis. This happened "three or four times." The first time it happened, respondent and A.N. were in the shed outside the house. Respondent locked the door to the shed, pulled his pants down, and A.N. "sucked [respondent's] wee-wee." The second and third time occurred in respondent's bedroom. A.N. said he would sometimes sleep in respondent's bedroom.

¶ 7 Respondent also told A.N. he could not play respondent's video games unless he pulled his pants down. When A.N. complied, respondent "opened [A.N.'s] butt cheeks" and inserted his finger into A.N.'s buttocks. A.N. stated that when respondent did that, it made A.N. feel like he

"had to go poop." After all four incidents, respondent allowed A.N. to play his video games. A.N. remembered the video game was a boxing game.

¶ 8 A.N. stated that he was afraid of respondent because respondent often treated him poorly, by pushing or punching him. Though A.N. told his father that respondent pushed or punched him, his father did not do anything to prevent it.

¶ 9 The State also entered into evidence a videotaped interview of A.N. with an employee of the Child Advocacy Center. In the videotape, A.N. provided the same story as he provided at trial. The State then rested.

¶ 10 Jamie T. testified that she was respondent's mother. She and respondent moved to Illinois because she was in a relationship with Jason. She and Jason leased a three-bedroom house together. She said the home had a water shed, but they did not have access to it as it was locked by the landlord. Jamie said she would occasionally watch A.N. when he was staying at their house and Jason was unavailable. She never heard A.N. complain about respondent, but she did hear A.N. talk about the man living with his mother. Jamie testified that A.N. stated that the man "was physically abusing [A.N.], like hurting him. I witnessed when they would come over [A.N.] would have bruises and looked like spank marks on the legs and bruises on the arms." Jamie said she tried to talk to Jason and Nicole about it, but when they were not responsive, she called DCFS. One week after she called DCFS, Nicole called Jason. Once Jason hung up the phone, Jamie said he started screaming at her and told her to get out of the house. She did not know why he was yelling at her. Jason left the house after the argument, but later returned to get some of his things. Jamie would not let him in the house without the police. A couple days later, Jamie and respondent moved back to Texas.

¶ 11 Jamie said she did not know if it was possible that something could have happened without her knowing since the kids would all play together and had to keep their bedroom doors open. However, she stated that she did not know A.N. to fabricate stories. She said A.N. would sleep in Jason's other son's room when he visited, not in respondent's room. If A.N. moved to respondent's room, it would have been after she and Jason were sleeping. However, she stated that she was a light sleeper and would have heard them walking around. Further, Jamie stated that she did not allow respondent to play boxing video games.

¶ 12 Respondent testified that, at the time of the hearing, he was 18 years old. When he lived with his mom and Jason, he was 14 years old. Jason's son Dillon also lived there. Respondent said when A.N. came to visit, he either slept on the couch or in Dillon's room. According to respondent, A.N. never slept in respondent's room, though respondent agreed that sometimes A.N. would come into his bedroom during the day. Respondent further stated that none of A.N.'s testimony was true and he had never abused, pushed, or punched A.N. However, he said he had scolded A.N. for using his things without permission. He had never gone into the shed with A.N. Respondent agreed that A.N. "never really lied about anything. [He was] always straightforward." Respondent said he did not have a boxing video game.

¶ 13 In rebuttal, Jason testified that there was a shed at the house, which sometimes had a padlock on it and sometimes did not. Jason terminated his relationship with Jamie because he received a telephone call from Nicole stating respondent had "done something to [A.N.] sexually." Jamie responded that A.N. was lying. Jamie then locked herself in the bedroom. As Jason was leaving the house, he told Jamie that they "[were] done and that [he] would be filing charges." He never raised his voice when speaking to her and never told her to leave. Jason informed the police about his concerns, and the police accompanied him to the house to collect

some of his things. He had never heard any complaints A.N. had about Nicole's boyfriend. There was never an investigation into Nicole's boyfriend's alleged abuse of A.N.

¶ 14 In closing argument, the State said:

"[A.N.] told this Court that when he was four-years-old [respondent] was very mean to him, that [respondent] pushed him and [respondent] punched him, and on three separate occasions [respondent] caused him to perform oral sex on him. ***

[A.N.] told you that the very first time this happened it was in the shed. I understand that [respondent's] mother testified that there was a padlock on the shed, but we do have testimony from [A.N.'s] dad saying that that padlock was not actually always on that shed.

So [A.N.] tells you that in the shed the very first time this happened, and he also testified as to two other occasions with oral sex. He testified that it happened in [respondent's] bedroom on two separate occasions."

The State further discussed the occasion in which respondent inserted his finger into A.N.'s buttocks. The State then went through several counts and how they had been proven, including stating, "Specifically in Count 4 we know that that happened on three different occasions, according to [A.N.'s] testimony."

¶ 15 In finding respondent guilty on all counts, the court stated that it found A.N.'s testimony credible and respondent and his mother's testimony not credible. A motion for a new trial was filed but was ultimately withdrawn by respondent.

¶ 16 The court found that respondent should be made a ward of the court and committed respondent to the DJJ. The court further sentenced respondent to 30 days in the DJJ on counts VIII and XI and awarded him 161 days' credit for time served.

¶ 17                                        ANALYSIS

¶ 18 On appeal, respondent argues (1) his "convictions for battery (Counts VIII and XI) and sexual exploitation of a child (Counts VI and VII) must be vacated under the one-act, one-crime doctrine because the same conduct that resulted in those convictions also resulted in two separate convictions for aggravated criminal sexual abuse (Counts I and IV)"; and (2) the case must be remanded for resentencing as the court did not make an express finding that committing respondent to the DJJ was the least restrictive alternative. We agree with respondent, insofar as count VIII must be vacated, as both count I and count VIII encompass the single act of respondent inserting his finger into A.N.'s buttocks. However, we uphold the rest of respondent's adjudications because we find that they were based on multiple, separate acts. Because we must remand for resentencing based on the vacatur of one of respondent's adjudications, we do not reach respondent's sentencing argument.

¶ 19 Respondent argues that four of his adjudications of delinquency must be vacated under the one-act, one-crime doctrine. Respondent admits that he forfeited this issue by failing to object in the circuit court and failing to preserve the issue in a posttrial motion but asks this court to review it under the second prong of plain error.[1] "The first step of plain-error review is determining whether any error occurred." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). If we find error, we then turn to the second prong question of whether the " 'error is so serious

_____

[1]Defendant does not argue that the first prong of plain-error analysis applies in this case.

that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process.' " *Id.* (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

¶ 20 Under the one-act, one-crime doctrine, a criminal defendant may not be convicted of multiple offenses based on the same physical act. *People v. Almond*, 2015 IL 113817, ¶ 47. In the context of the one-act, one-crime rule, "act" means "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977). Unless one offense is a lesser-included offense of another, "[m]ultiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts." *Id.*

¶ 21 The one-act, one-crime doctrine involves a two-step analysis. *People v. Miller*, 238 Ill. 2d 161, 165 (2010). First, we determine whether respondent's conduct involved multiple acts or a single act. *Id.* If respondent's conduct involved only one physical act, multiple adjudications are improper. *Id.* If respondent's conduct involved multiple physical acts, we move to the second step of determining whether one offense is a lesser-included offense of another. *Id.* Multiple adjudications are improper only if one offense is a lesser-included offense of the other. *Id.*

¶ 22 In arguing that four of his adjudications of delinquency should be vacated, respondent considers his adjudications as two sets of three based on the incidents of respondent inserting his finger into A.N.'s buttocks (counts I, VII, and VIII) and forcing A.N. to place his mouth on respondent's penis (counts IV, VI, and XI). For clarity, we will do the same.

¶ 23                                  Counts I, VII, and VIII

¶ 24 First, respondent argues that his adjudications on counts I, VII, and VIII all involve one act: respondent inserting his finger into A.N.'s buttocks. Count I was for aggravated criminal sexual abuse in that respondent intentionally/knowingly spread the cheeks of A.N.'s buttocks and inserted his finger into A.N.'s buttocks. Count VII was for sexual exploitation of a child in that respondent coerced A.N. to remove his clothes. Count VIII was for battery in that respondent knowingly made offensive contact of an insulting or provoking nature with A.N. when he spread the cheeks of A.N.'s buttocks and inserted his finger into A.N.'s buttocks. Respondent concludes that count I should be upheld and that counts VII and VIII should be vacated. See *People v. Lee*, 213 Ill. 2d 218, 226-27 (2004) (where a conviction and sentence must be vacated for a violation of the one-act, one-crime rule, it is the less serious offense that must be vacated).

¶ 25 The State concedes that count I and count VIII arise from the same act, and therefore, count VIII should be vacated. See *id.* After reviewing the record, we accept the State's concession and vacate respondent's adjudication of delinquency on count VIII. We now turn to the question of whether count I and count VII arise from the same act.

¶ 26 Here, respondent committed multiple physical acts: (1) respondent coerced A.N. to remove his clothes, and (2) respondent spread the cheeks of A.N.'s buttocks and inserted his finger into A.N.'s buttocks. Although respondent's coercion of A.N. to remove his clothes and the inserting of his finger into A.N.'s buttocks occurred very close in time, "that factor alone does not render his conduct a 'single act' for purposes of the one-act, one-crime rule." *Almond*, 2015 IL 113817, ¶ 48.

¶ 27 In coming to this conclusion, we reject respondent's argument that "[i]n order for the [respondent] to effectuate the charge in Count I, A.N.'s clothes would inevitably needed to have been removed." We note that respondent has cited no law for this statement. Moreover, the contention that anal penetration necessitates removal of clothing is patently untrue. A charge of aggravated criminal sexual abuse, as respondent was charged, does not require removal of clothing but provides for sexual conduct by touching the victim through clothing. 720 ILCS 5/11-1.60(c)(2)(i), 11-0.1(2)(C)(2) (West 2012). Finally, we note that count I does not make any mention of removal of clothing. Therefore, respondent could have been adjudicated delinquent on count I whether or not he forced A.N. to remove his clothing.

¶ 28 Having determined that respondent's adjudications on counts I and VII are based on separate acts, we now consider whether one offense is a lesser-included offense of the other.[2] In the context of the one-act, one-crime rule, we use the abstract elements approach to determine if one offense is a lesser-included offense of another. *Miller*, 238 Ill. 2d at 174-75. "Under the abstract elements approach, a comparison is made of the statutory elements of the two offenses. If all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second." *Id.* at 166.

¶ 29 In order to adjudicate respondent delinquent for aggravated criminal sexual abuse, the State had to prove (1) respondent was under the age of 17, (2) respondent committed an act of sexual conduct, and (3) the victim was under the age of 9. 720 ILCS 5/11-1.60(c)(2)(i) (West 2012).

> " 'Sexual conduct' means any knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim or the accused, or any part of the body of a child under 13 years of age, or any transfer or transmission of semen by the accused upon any part of the clothed or unclothed body of the victim, for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/11-0.1(2)(C)(2) (West 2012).

On the other hand, to adjudicate respondent delinquent for sexual exploitation of a child, the State had to prove (1) respondent knowingly coerced the victim to remove his clothing, (2) the victim was under the age of 17, and (3) respondent's purpose was sexual arousal or gratification of himself or the victim. 720 ILCS 5/11-9.1(a-5), (b) (West 2012). The statutory elements of aggravated criminal sexual abuse (count I) do not require respondent to force the victim to remove his clothing. Similarly, the elements of sexual exploitation of a child (count VII) do not require respondent to commit an act of sexual conduct. Therefore, neither of these offenses was a lesser-included offense of the other, and we uphold both adjudications of delinquency.

---

[2]In doing so, we note that defendant does not address the second step of the one-act, one-crime doctrine: whether one is a lesser-included offense of the other. Instead, defendant merely addresses the first step: whether defendant's conduct involved multiple acts or a single act. While defendant's decision to not address the second step results in forfeiture of any argument with regards to said step (Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016)), we will examine the issue in the interest of clarity and justice.

¶ 30                                    Counts IV, VI, and XI

¶ 31         Respondent next argues that counts IV, VI, and XI also all involve one physical act:
respondent forcing A.N. to place his mouth on respondent's penis. Count IV was for
aggravated criminal sexual abuse in that respondent intentionally/knowingly forced A.N. to
place his mouth on respondent's penis. Count VI stated that respondent committed sexual
exploitation of a child in that he exposed his penis to A.N. Count XI stated that respondent
committed battery in that he knowingly made offensive contact of an insulting nature with
A.N. when he intentionally/knowingly forced A.N. to place his mouth on respondent's penis.
Respondent concludes that count IV should be upheld and counts VI and XI should be vacated.
In response, the State argues that all three adjudications of delinquency should be upheld.

¶ 32         Here, as above, respondent did commit multiple acts: (1) forced A.N. to place his mouth on
respondent's penis in the shed; (2) forced A.N. to place his mouth on respondent's penis in the
bedroom; and (3) forced A.N. to place his mouth on respondent's penis a second time in the
bedroom. However, unlike the three counts set out above (*supra* ¶¶ 24-29), which were all
based on one incident (respondent inserting his finger into A.N.'s buttocks), the acts described
in counts IV, VI, and XI were all separate acts that took place on three separate occasions.
Therefore, by definition, none of the three adjudications can be a lesser-included offense of
another, as a lesser-included offense is one that is carved from the same occurrence as the
greater offense (*People v. Depner*, 89 Ill. App. 3d 689, 694 (1980)) and is "necessarily
committed in carrying out the greater crime." Black's Law Dictionary 1251 (10th ed. 2014).
Stated another way, as there were three separate crimes on three separate occasions, it was not
necessary to commit one in order to commit another. Therefore, we uphold all three
adjudications.

¶ 33         In doing so, we reject respondent's argument that "the State failed to apportion each
singular occasion to one specific count." In support of his argument, respondent cites *People v.
Crespo*, 203 Ill. 2d 335 (2001). In *Crespo*, the Illinois Supreme Court held that multiple
convictions of aggravated battery could not be sustained even though evidence was elicited at
trial that the defendant stabbed the victim "three times in rapid succession" because the State
failed to apportion the stab wounds among multiple charges in the indictment and the
prosecutor portrayed the defendant's conduct as a single attack during closing arguments. *Id.* at
338.

¶ 34         Here, the State charged respondent with three separate counts based on the instances in
which respondent forced A.N. to place his mouth on respondent's penis. Additionally, the
State argued during closing arguments that this happened "on three separate occasions." We
further note that *Crespo* is factually distinguishable from the instant case. In *Crespo*, the three
stabbings all took place within a matter of minutes, while in this case, the three instances took
place over a period of time, between February 1 and May 1, 2012, which more readily availed
themselves of supporting separate adjudications.

¶ 35         We further reject respondent's argument that:

                "Since the State did not specify which of the three times A.N. placed his mouth on the
                [respondent's] penis was apportioned to the three counts with which the [respondent]
                was charged, it is entirely possible that the trial judge convicted the [respondent] three
                times based on one of the three occurrences. [Citation.] This possibility is bolstered
                where, in finding the [respondent] guilty, the trial judge did not make specific findings

as to each count with which the [respondent] was charged but merely stated: '…I'm going to find the defendant guilty on all counts that were not directed out.' "

The court is not required to make a specific finding as to each count. See 705 ILCS 405/5-620 (West 2012) ("After hearing the evidence, the court shall make *** a finding of whether or not the minor is guilty."); see also, *e.g.*, 725 ILCS 5/115-3(b) (West 2012) ("Upon conclusion of the trial the court shall enter a general finding ***."). Further, in making its finding, the court specifically stated that it found A.N. credible, who had stated that respondent forced A.N. to place his mouth on respondent's penis on three separate occasions.

¶ 36    In sum, we vacate respondent's adjudication of delinquency for battery (count VIII), uphold the remainder of respondent's adjudications of delinquency, and remand for resentencing on the remaining findings of guilt. Because we remand for resentencing, we do not reach respondent's second argument.

¶ 37                                                    CONCLUSION

¶ 38    The judgment of the circuit court of Grundy County is affirmed in part, vacated in part, and remanded.

¶ 39    Affirmed in part and vacated in part.

¶ 40    Cause remanded.