2026 IL App (1st) 241967-U

SECOND DIVISION
June 23, 2026

No. 1-24-1967

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 1061401 |
| | ) | |
| OSCAR TURNER, | ) | Honorable |
| | ) | Thomas Joseph Hennelly, |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Affirmed. Postconviction counsel did not perform unreasonably in failing to amend postconviction petition.

¶ 2   Petitioner Oscar Turner appeals the dismissal of his postconviction petition at the second stage. He claims that postconviction counsel performed unreasonably in failing to amend his petition to adequately present his claim. We disagree and affirm.

¶ 3                    BACKGROUND

¶ 4                I. Trial and direct appeal

¶ 5   Petitioner was convicted after a bench trial of being an armed habitual criminal. To put his post-conviction claims into context, we briefly recap some relevant aspects of his trial and direct appeal. For full details, see *People v. Turner*, 2016 IL App (1st) 140375-U.

¶ 6     On the evening of May 28, 2012, Chicago Police Officers Rubald and Harris responded to a call of a man with a gun. They arrived to find petitioner standing next to a Lexus. He was closing the passenger door and appeared to be alone. The officers approached and identified themselves. Petitioner promptly fled.

¶ 7     Officer Harris recovered an assault rifle, with an unloaded magazine, that was sitting in plain view on the passenger's seat. The firearm was not tested for fingerprints, since Harris and other officers handled it without gloves.

¶ 8     Officer Rubald chased petitioner, who slipped out of sight and took refuge in a nearby house. Acting on information received, Officer Rubald and Sergeant Schulz searched the house, with the occupant's consent, and found petitioner hiding in a crawl space. They searched him, found nothing but some cash, and took him to the station to be booked.

¶ 9     According to the officers, petitioner made two statements at the station. First, while processing petitioner and filling out an arrest report, Officer Rubald asked petitioner about the Lexus. Petitioner answered that he just purchased it.

¶ 10    Second, Sergeant Schulz testified that he spoke to petitioner. After he read petitioner his *Miranda* rights, petitioner admitted that he "got that gun from [his] boy who asked [him] to put it up." Petitioner was waiting for his friend when the officers arrived, but his friend never showed up. Sergeant Schulz acknowledged that there were no witnesses to petitioner's oral statement and that it was neither recorded nor reduced to writing. The statement was mentioned in a general case report written by a different officer.

¶ 11    In his own testimony, petitioner denied that either the Lexus or the assault rifle was his.

And he denied both admissions that the officers attributed to him. But most importantly for our purposes here, petitioner denied that he spoke to Sergeant Schulz at all. In fact, he never even laid eyes on Sergeant Schulz until the trial. In petitioner's own words: "This was my first time ever seeing him." And again: "I never met his acquaintance, that's correct."

¶ 12    Among other arguments in closing, defense counsel urged that there was "a question whether the statement [to Sergeant Schulz] was made." Counsel emphasized that the statement was unwitnessed, unrecorded, and never reduced to writing. The trial court specifically found Sergeant Schulz's testimony on this point "credible." And the court noted that its guilty finding "hinge[d], of course, on [this] admission." Petitioner reiterated these arguments—in essence, a sufficiency challenge, based on the officer's credibility—in his motion for new trial.

¶ 13    On direct appeal, petitioner argued that trial counsel was ineffective for not moving to suppress his statement to Officer Rubald as a *Miranda* violation. *Id.* ¶ 15. We held that petitioner did not establish *Strickland* prejudice, because his statement to Officer Rubald was largely immaterial to the trial court's finding of guilt. Instead, that finding was based primarily on his admission to Sergeant Schulz that he received the firearm from a friend—"a statement whose validity [petitioner did] not challenge on appeal." *Id.* ¶ 17.

¶ 14                                    II. Postconviction

¶ 15    Petitioner raised several claims in a *pro se* petition. These claims were not supported by any affidavits, including petitioner's own, or any other evidence. The circuit court advanced the petition to the second stage. Several years later, appointed counsel filed a Rule 651(c) certificate and stood on the *pro se* petition, without amending it or submitting any new evidence.

¶ 16    Only one claim in the *pro se* petition, alleging ineffective assistance of appellate counsel, remains at issue: appellate counsel "should have challenged the statement" made to Sergeant Schulz on appeal, because that was the evidence on which the trial court relied to convict him.

¶ 17    What did the petition mean by "challenge?" It could be one of two things: a suppression argument or a sufficiency-of-the-evidence argument—the sergeant's testimony was so incredible that no reasonable factfinder could accept it. The petition alleged nothing that would ring of a suppression argument. It did not claim the sergeant physically or mentally coerced him or failed to *Mirandize* him or tortured him or tricked him.

¶ 18    The petition did, however, strongly suggest a sufficiency argument. Petitioner alleged that this "challenge" would have been "backed by the fact that when the statement was given to Sgt. Schulz no one else was present and he did not author a report." That information would have no relevance to a fifth-amendment violation but everything to do with a credibility challenge.

¶ 19    If that wasn't clear enough, the petition's conclusion noted that it was not credible that a different officer wrote up the report chronicling his alleged statement to Sergeant Schulz when only Sergeant Schulz was present for petitioner's inculpatory statement:

> "The appeal brief filed on Mr. Turner's behalf was a mockery. As Sgt. Schulz stated at trial he pre-read Mr. Turner his *Miranda* rights before any questioning took place. *** If the officers involved made the general offense report before the confession was given then the statement recorded is false and as Sgt. Schulz stated at trial only he and the defendant was present when the statement was given and no one else was present. So the argument of one officer was writing the report while the other officer was asking

questions is not plausible."

¶ 20    Though the petition clearly took the route of claiming appellate counsel was ineffective for not mounting an attack on the sergeant's credibility, at the hearing on the motion to dismiss, postconviction counsel (a new public defender who had taken over the case) opted for the suppression argument, claiming that appellate counsel should have argued that petitioner's statement to Sergeant Schulz was the product of a *Miranda* violation. It made no difference, said counsel, that petitioner denied making the statement to the sergeant in the first place, for "a defendant can file a motion to suppress statements even when they deny making the statement." Nor, counsel claimed, did it matter that petitioner denied ever *encountering* the sergeant in the station house: "If Mr. Turner never met Sergeant Schulz, he could not have been Mirandized by him which would have been a basis for a motion to suppress statements."

¶ 21    The circuit court rejected this argument and dismissed the petition. The court concurred with our assessment that the petition "doesn't directly indicate that a second Motion to Suppress should have been filed" and "doesn't really make that claim" but agreed that it may have "tacitly implie[d]" as much. In any event, the court ruled that appellate counsel was not ineffective for failing to argue that petitioner's statement to Sergeant Shulz should have been suppressed:

> "[The trial judge] believed Sergeant Schulz [and] found him to be credible. And that was the basis for Judge Davy's decision. So, one is certainly at a loss to determine how appellate counsel could challenge the failure to suppress an oral statement to the sergeant which the court explicitly found was credible and believable. The success of that obviously would be minimal at best. And I do not find that Appellate counsel was

ineffective for not raising that issue. In fact, I think that this was prudent based on the trial record."

¶ 22   This appeal followed.

¶ 23                               ANALYSIS

¶ 24   As the postconviction right is a creature of statute, the right to counsel is likewise statutory and not constitutional. *People v. Porter*, 122 Ill. 2d 64, 73 (1988). A petitioner is entitled only to the reasonable assistance of counsel. *People v. Huff*, 2024 IL 128492, ¶ 21. Petitioner claims that postconviction counsel did not provide reasonable assistance in failing to amend his *pro se* petition to adequately present his claim.

¶ 25   Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) governs postconviction counsel's duty of reasonable assistance. The record as a whole must show that counsel (1) met with the petitioner to ascertain his claims; (2) examined the parts of the record relevant to the alleged constitutional errors; and (3) made any amendment to the petition necessary for an adequate presentation of petitioner's claims. *Id*. If, as here, counsel files a valid certificate of compliance with Rule 651(c), we presume that counsel provided reasonable assistance absent affirmative evidence in the record to the contrary. *Huff*, 2024 IL 128492, ¶ 23.

¶ 26   Counsel is not required to advance frivolous claims. *Id*. ¶ 22. Nor is counsel required to add new claims to those in the original petition. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006); *People v. Davis*, 156 Ill. 2d 149, 164 (1993). But counsel must shape the claims petitioner chose into proper legal form if possible. *People v. Addison*, 2023 IL 127119, ¶ 20.

¶ 27   That means, among other things, that if a petition is procedurally defective, counsel must

fix that defect if possible to do so in good faith. Relevant here, if a claim was forfeited at trial and/or on direct appeal, counsel must amend the petition to frame the claim as one of ineffective assistance of trial and/or appellate counsel for failing to raise it earlier. *People v. Williams*, 2024 IL 127304, ¶ 20; *Addison*, 2023 IL 127119, ¶ 23.

¶ 28    That is where the rubber meets the road here. Petitioner says that postconviction counsel did not amend the *pro se* petition to adequately present the claim he argued to the judge: that *appellate* counsel was ineffective for failing to argue that *trial* counsel was ineffective for failing to move to suppress the statement petitioner made to Sergeant Schulz. The *pro se* petition clearly alleged ineffective assistance of *appellate* counsel, petitioner acknowledges, but it did not allege ineffectiveness of trial counsel.

¶ 29    As we have already explained, however, we do not read the *pro se* petition as alleging a double-ineffectiveness argument based on a *Miranda* violation committed by Sergeant Schulz. The petition rather clearly alleged that direct-appeal counsel was ineffective for failing to argue that Sergeant Schulz's testimony was so incredible that, even under a deferential standard, it had to be rejected. And *that* claim, in our view, was properly pleaded and required no amendment.

¶ 30    A *Strickland* claim requires (1) deficient performance by counsel and (2) prejudice resulting from that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Domagala*, 2013 IL 113688, ¶ 36. The *pro se* petition alleged that "[a]ny reasonable lawyer would have and should have challenged the statement [to Schulz] on appeal," as both the trial court and this court on direct appeal noted that the conviction "hinge[d]" on that admission to Sergeant Schulz. *Turner*, 2016 IL App (1st) 140375-U, ¶ 17. And the petition supplied reasons

from the trial to challenge this testimony—Schulz claimed to be alone with petitioner when the statement was made, he did not record the statement, and the statement was later memorialized by a different officer. The *pro se* petition properly pleaded appellate counsel's deficient performance accompanied with the facts from trial that would support that argument.

¶ 31    And the *pro se* petition alleged that the issue appellate counsel failed to raise "may have resulted in a reversal of conviction." That, in sum and substance, is an allegation of prejudice. See *Domagala*, 2013 IL 113688, ¶ 36 (prejudice means "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (quoting *Strickland*, 466 U.S. at 694)). And in context, that stands to reason; there is no question that the linchpin of the case was Schulz's testimony. Had appellate counsel persuaded this court that Schulz's testimony could not be believed—a tall mountain, no doubt—then it is certainly likely that petitioner would have obtained a reversal of his conviction.

¶ 32    Hear us loud and clear: we are not saying it was a winning petition; it was not. The trial court specifically found Sergeant Schulz credible. The likelihood of overturning that credibility determination was fairly close to zero. But that is not even close to the standard for reasonable assistance. Postconviction counsel is not required to perform miracles; he is required to ensure that the petition adequately presents the claim the petitioner intends to raise. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The petition here adequately set forth its claim. No amendment was required.

¶ 33    So what happened at the hearing? We agree with the State that counsel, probably sensing that the pleaded claim had little chance of success, added a new claim—the suppression argument based on Schulz's violation of *Miranda*. Again, was it meritorious? It was not.

¶ 34    Counsel relied on the doctrine that a defendant may challenge the voluntariness of a statement to police even when the defendant denies making the statement. That is a true statement of the law as far as it goes, the so-called "*Lee* doctrine." See *Lee v. Mississippi*, 332 U.S. 742, 745 (1948); *People v. Norfleet*, 29 Ill. 2d 287, 291 (1963); *People v. Wilson*, 66 Ill. App. 3d 330, 335 (1978) (extending *Lee* to alleged *Miranda* violation). But the facts here are yet another step removed; petitioner did not merely deny making the statement; he said he never spoke to (or even met) Sergeant Schulz at the police station. Our research yields no example of *Lee* applying to *those* facts, and it is impossible to believe that one would exist. *Miranda* only applies to custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966). It is hard to convince a court both that you never met someone *and* they interrogated you while in custody.

¶ 35    But all that means is that counsel, armed with a properly pleaded but losing petition, tried a "Hail Mary" of a new argument that didn't carry the day, either. That's not unreasonable assistance. *People v. Williams*, 2025 IL 129718, ¶ 46 ("Postconviction counsel did not perform unreasonably in this case simply because his arguments were without merit."). And it certainly doesn't mean that counsel failed to amend the postconviction petition to ensure an "adequate presentation" of the claim petitioner raised—a sufficiency challenge to Sergeant Schulz's testimony. Ill. S. Ct. R. 561(c) (eff. July 1, 2017). As noted above, that petition required no amendment.

¶ 36    We find no violation of Rule 651(c). We reject the claim of unreasonable assistance.

¶ 37    Affirmed.